BARKER,

v.

LIGHTNING ROD MUTUAL INSURANCE COMPANY, Appellee;
Motorists Mutual Insurance Company, Appellant.

[Cite as *Barker v. Lightning Rod Mut. Ins. Co.* (1993), 90 Ohio App.3d 190.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–614.

Decided Sept. 9, 1993.

*Wilcox, Schlosser & Bendig Co., L.P.A.,* and *Charles H. Bendig,* for Julie Barker.

*Siemer, Leighton & Love* and *Walter J. Siemer,* for appellee Lightning Rod Mutual Insurance Company.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A.,* and *W. Charles Curley,* for appellant.

---

Tyack, Judge.

Julie Barker was seriously injured in a one-car accident. The owner and operator of the motor vehicle was John Stottlemyer. Stottlemyer's vehicle was

insured by State Farm Insurance Company. Because of the severity of her injuries, Barker was paid the full policy limits of $100,000.

Barker was also entitled to underinsured motorist coverage as a result of separate policies with Lightning Rod Mutual Insurance Company ("Lightning Rod") and with Motorists Mutual Insurance Company ("Motorists Mutual"). The Lightning Rod policy contained a paragraph which read:

"**OTHER INSURANCE**

"If there is other applicable similar insurance[,] we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

The Motorists Mutual policy included the following provision:

"**E.   Other Insurance.**

"With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Barker filed a declaratory judgment action against Lightning Rod seeking to have her rights as to her underinsured motorist coverage clarified. Lightning Rod in turn filed a third-party action against Motorists Mutual. Motorists Mutual then cross-claimed against Lightning Rod.

Barker's underinsured motorist claims were submitted to an arbitration panel, which determined that her damages exceeded the $300,000 policy limits of the

Lightning Rod and Motorists Mutual policies. As a result, she was paid an additional sum of $200,000.

The litigation then proceeded to determine the allocation of the $200,000 figure between Lightning Rod and Motorists Mutual. The trial court, based upon the paragraphs in the policies which are set forth above, granted summary judgment to Lightning Rod. The trial court interpreted the paragraphs to mean that Lightning Rod's policy was excess coverage to be available only if other insurance with limits less than $300,000 was collectible. Because Motorists Mutual provided collectible insurance up to the $300,000 dollars, the Lightning Rod policy never was utilized.

Motorists Mutual has appealed, assigning three errors for our consideration:

"1. The trial court erred in concluding that State Farm's UM coverage was 'available' to Barker, since the clear language of that policy precludes UM coverage and since State Farm paid no UM benefits to Barker.

"2. The trial court erred in determining that the legal effect of the 'Other Insurance' provisions of the Motorists and Lightning Rod policies is that the Lightning Rod policy is excess over the Motorists policy and that, as a result, the entire obligation to Julie Barker must be borne by Motorists.

"3. The trial court erred in failing to determine that the obligations of Lightning Rod and Motorists to Barker must be prorated according to the UM limits of each policy."

Motorists Mutual has summarized its argument regarding the three assignments of error as follows:

"Where 'other insurance' clauses in uninsured motorist policies contain similar pro-rata provisions or mutually repugnant excess provisions, the obligations of the insurers to the insured must be prorated according to the limits of liability in each policy."

Conversely, Motorists Mutual maintains that the excess clause must be construed to limit its underinsured motorist coverage due to the existence of Lightning Rod's "similar" underinsured motorist coverage. Motorists Mutual claims that only State Farm's third-party liability coverage was "available" to Barker and "applicable" to Stottlemyer's vehicle. As a result, Motorists Mutual submits that the State Farm policy cannot be termed as "similar" insurance to that which it provided to Barker.

Lightning Rod asserts that the trial court correctly analyzed the policy provisions and properly allocated the entire remaining financial burden to Motorists Mutual.

Analyzing the language of the Motorists Mutual policy, the first paragraph under subdivision "E" addresses the situation where the motor vehicle in question has other insurance which is "applicable * * * as primary insurance." The motor vehicle which is covered by the Motorists Mutual policy has no other applicable insurance. The State Farm policy was not applicable to this vehicle, but was applicable to a different vehicle—the vehicle in which Barker was a passenger at the time of the collision. Thus, this first paragraph under subdivision "E" does not apply to the present situation.

As a result, the second paragraph of subdivision "E" is the paragraph which must be applied in conjunction with the "Other Insurance" paragraph of the Lightning Rod policy. Reviewing those two paragraphs, the pertinent provisions are in most regards the same. Both policies define the limits of liability as not exceeding the higher of the applicable limits of the policy and the limits of the potentially applicable policy. Each policy calls for the policy to cover the proportionate share of the liability, computed by use of the ratio between the limits of the policy and the sum of the limits of liability of all the applicable policies.

The Lightning Rod policy contains one additional sentence: "However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." The trial court found that this additional sentence resulted in Lightning Rod's being obliged to pay only after the Motorists Mutual policy was exhausted, since the Motorists Mutual policy provided "collectible insurance." While the trial court's interpretation of the effect of this sentence is reasonable and understandable, we believe that the interpretation is incorrect.

Lightning Rod, in the first two sentences of the "Other Insurance" paragraph, has affirmatively stated that Lightning Rod is obligated to pay its proportional share. Having affirmatively stated that obligation, Lightning Rod cannot then refuse to honor the obligation by means of the last sentence without making the paragraph self-contradicting. The interpretation of the effect of the last sentence urged by Lightning Rod and adopted by the trial court turns the "Other Insurance" paragraph into a paragraph which states, in essence, "We will pay our proportionate share of the underinsured motorist coverage, unless the other policies which we use to compute our share are collectible policies. If the other policies are collectible, we will use them to minimize our proportionate share and then we refuse to pay that share." This interpretation seems not only to make the "Other Insurance" provision of the Lightning Rod policy internally inconsis-

tent, but also is inconsistent with the definition of "uninsured motor vehicle" contained in the policy, which reads, in pertinent part:

" 'Uninsured motor vehicle' means a land motor vehicle * * *

"4.   To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

"a.   denies coverage;  or

"b.   is or becomes insolvent."

Because we view the last sentence of the "Other Insurance" paragraph of the Lightning Rod policy as being in conflict with other pertinent provisions of the policy if the sentence is construed to include other underinsured motorist coverage as "collectible insurance," we do not so construe it.   Instead, we construe "any other collectible insurance" to refer to insurance other than underinsured motorist coverage.   This makes the paragraph internally consistent, since the first two sentences mean that Lightning Rod will pay its share of the underinsured motorist coverage, while the last sentence means that Lightning Rod's obligation may be reduced by other kinds of insurance (such as medical coverage).

Given this interpretation, each insurance company is obligated for its pro-rata share.   The three assignments of error are sustained.   The judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to the trial court with instructions to enter judgment consistent with this opinion.

*Judgment reversed*
*and cause remanded*
*with instructions.*

DESHLER and CLOSE, JJ., concur.