**HAMILTON MUTUAL INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY; United Services Automobile Association; Jay P. Turner, Phillip Turner, and Southeastern Group, Inc. (d/b/a Blue Cross and Blue Shield), Appellees.**

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Cross/Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY; The Hamilton Mutual Insurance Company; Jay P. Turner, Phillip Turner, and Southeastern Group, Inc., (d/b/a Blue Cross and Blue Shield), Cross/Appellees.**

**UNITED STATES FIDELITY & GUARANTY COMPANY, Cross/Appellant,**

v.

**UNITED STATES AUTOMOBILE ASSOCIATION, Hamilton Mutual Insurance Company, Cross/Appellees.**

Nos. 94–CA–2788–MR, 94–CA–2818–MR and 94–CA–2888–MR.

Court of Appeals of Kentucky.

July 26, 1996.

H. Brent Brennenstuhl, Bowling Green, for Hamilton Mut. Ins. Co.

W. Mitchell Nance, Glasgow, for Nancy Gibson, Rachel Gibson & Ray Gibson.

Reford H. Coleman, Elizabethtown, for United Services Auto. Ass'n.

B. Frank Radmacher, III, Louisville, for Southeastern Group.

Armer H. Mahan, Jr., Gene F. Zipperle, Jr., Louisville, for U.S. Fidelity & Guar. Co.

Before WILHOIT, C.J., and HOWERTON and KNOPF, JJ.

## OPINION

HOWERTON, Judge.

Hamilton Mutual Insurance Company (Hamilton) appeals from an order of the Barren Circuit Court finding that it owed underinsured motorist (UIM) coverage for an accident involving a family-available vehicle for which Hamilton did not provide basic coverage. United States Automobile Association (USAA) cross-appeals from the same order which determined that it also owed UIM coverage. USAA likewise had not insured the vehicle in the accident. Additionally, United States Fidelity & Guaranty Company (USF&G), which did insure the vehicle, appeals as to the apportionment of liability among the three insurers. It also alleges error in the trial court's denial of its motion to compel discovery of the tort-feasor's assets following USF&G's substitution of settlement payment to preserve its subrogation rights. After reviewing the record, we reverse and remand on the grounds to be set forth.

This action arose as a consequence of a motor vehicle accident which occurred on January 30, 1992, in Barren County, Kentucky. Nancy Gibson was driving a Lincoln Town Car in which her daughter, Rachel, was riding as a passenger. The Lincoln was registered in the name of Dr. Ray Allen Gibson, M.D., P.S.C. The Gibson vehicle collided with a vehicle owned by Phillip Turner and driven by Jay Turner, causing physical injuries to both Nancy and Rachel.

In addition to the Lincoln, there were two other vehicles available for use by the Gibson household. The 1990 Lincoln was insured under a policy issued by USF&G, which provided UIM limits of $100,000 per accident. A 1979 Chevrolet Scottsdale pickup was insured by USAA under a policy providing UIM limits of $300,000 per person and $500,000 per accident. Finally, a 1984 Chevrolet Blazer was insured by a policy through Hamilton which provided UIM limits of $500,000 per accident. Both the pickup and the blazer were registered to Dr. Ray Allen Gibson under personal coverage policies, while the Lincoln was insured under a business policy to Dr. Gibson's P.S.C.

In January 1993, Rachel and Nancy Gibson, along with Dr. Gibson, filed suit against the Turners. The Gibsons also named USF&G, USAA, and Hamilton as defendants to the action under claims for UIM benefits. During the course of the litigation, the Gibsons made some settlement with the Turners which utilized their liability insurance policy limits of $100,000. USF&G, the carrier for the Lincoln involved in the accident, elected to substitute payment of the settlement so as to preserve its subrogation rights in accor-

dance with *Coots v. Allstate Ins. Co.*, Ky., 853 S.W.2d 895 (1993).

The Gibsons and each of the three UIM carriers filed motions for summary judgment and a declaration of coverage available to the Gibsons under the policies. In the motions, USF&G agreed that UIM benefits were available under its policy, but claimed that USAA and Hamilton also owed coverage under their policies. USAA and Hamilton both argued that their policies excluded coverage under the "owned but not scheduled for coverage" provisions, wherein UIM coverage was not provided for vehicles owned by the Gibson household but not listed for coverage under the policy in question.

By order styled "Summary Judgment on Counts VI, VII, and VIII of Complaint", dated March 28, 1994, the trial court ruled that UIM benefits were available to the Gibsons under all three policies, and that coverage would be apportioned on a pro rata basis according to the respective limits of liability. The total UIM coverage available was determined to be $900,000, and the court determined that Hamilton would be responsible for 5/9 of any excess judgment, USAA would be responsible for 3/9, and USF&G would be responsible for 1/9, not to exceed each policy's limits. Hamilton and USAA each filed motions to alter, amend, or vacate, and on June 2, 1994, the trial court entered an amended partial summary judgment. The trial court vacated the prior order as to the fractional apportionment and adopted an equal division of benefits wherein each carrier would be responsible for 1/3 of any excess judgment. On June 6, 1994, the trial court again amended the partial summary judgment to clarify that the division of coverage would be redistributed when any carrier's limits were exhausted. Finally, on November 2, 1994, the trial court entered a third amended partial summary judgment in which it incorporated by reference the second amended judgment and designated that the adjudication was final and appealable.

It is from the last order that Hamilton filed its notice of appeal in November 1994, and USAA and USF&G filed their cross-appeals. This Court initially dismissed the appeal as premature. Subsequently, we received a motion for reconsideration and a copy of a circuit court order stating that the Gibsons had settled with all defendants and were dismissed from the proceedings. It appears as though all that remains at this juncture is the dispute between the three UIM carriers as to apportionment of their liability. We note, however, that we have not been provided with any details as to the nature of the settlement, the total amount in controversy, or what amount, if any, was agreed to for either or both Nancy and Rachel.

Hamilton argues on appeal, as does USAA in its cross-appeal, that the "owned but not scheduled for coverage" provision of the policy excludes coverage for UIM benefits. The provision states:

Exclusions.

A. We do not provide Uninsured or Underinsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy.

The provision in USAA's policy contains essentially the same language. It is Hamilton's contention that even though the Lincoln was registered and insured under Dr. Gibson's P.S.C., such is merely the "alter ego" for the professional. Thus, the Lincoln was owned by a "family member" and not covered under the Hamilton policy, and therefore was excluded from coverage under the above provision. We can only conclude that the policy provision is unenforceable in this case, and that the "alter ego" argument is irrelevant.

In *Chaffin v. Kentucky Farm Bureau Ins. Co.*, Ky. 789 S.W.2d 754 (1990), our Supreme Court held that Farm Bureau owed uninsured motorist (UM) coverage to its insured under three separate policies issued by Farm Bureau covering three separate vehicles. In doing so, the Court determined that the "owned but not scheduled for coverage" clause in the Farm Bureau policies was "nearly incapable of rational construction" and "so broadly drawn as to obfuscate its purpose in prevention of fraud, if indeed such

is its primary purpose." *Id.* at 756, 757. The Court went on to state:

> If appellant had been injured by an uninsured motorist while riding in the vehicle of a friend or while walking across a street, uninsured motorist coverage would have been available from all three of her uninsured motorist policies. (citations omitted). By its own terms, the other vehicle exclusion in appellant's policy would not be applicable to such facts. It was significantly more probable, however, that appellant would be injured by an uninsured motorist while operating or riding as a passenger in her own motor vehicle and indeed, she was injured under just such circumstances. Inasmuch as uninsured motorist coverage "has a number of aspects of accident insurance," it is contrary to the underlying purpose of such coverage to allow recovery upon multiple policies in the extraordinary situation and deny same in the more conventional circumstance. (citation omitted). It is always possible to exclude coverage to such an extent that only in the rarest of circumstances would a claim ever arise. Such, of course, defeats the underlying purpose of insurance. Appellee's argument that such an exclusion is necessary for prevention of fraud is simply insufficient to overcome the other relevant considerations and the exclusion is therefore unreasonable.

*Id.* at 757.

Although we are presented with a situation in which three separate carriers insured the three vehicles for UIM, as well as UM, the foregoing rationale applies as forcefully in this case as it did in *Chaffin.* Quite simply, had the Gibsons been injured while riding as a passenger in another's vehicle, there would be no dispute that coverage would be available from all three carriers. We must conclude that the "owned but not scheduled for coverage" provisions in Hamilton's and USAA's policies are unreasonable as well.

Hamilton and USAA urge this Court to refrain from expanding the concept of "stacking" where three policies of coverage were issued by three different insurance companies. Unfortunately, given the logic and reasoning thus espoused by our Supreme Court,

we are unable to conclude that the instant case presents a distinction with a difference. If a different result is to come from these differences, our Supreme Court must direct it. The public policy of Kentucky regarding stacking was first enunciated in *Meridian Mut. Ins. Co. v. Siddons,* Ky., 451 S.W.2d 831 (1970), in which the Supreme Court held that stacking of UM coverage by the named insured was permitted where there were separate policies for each vehicle insured and where the named insured had not rejected coverage in writing. A litany of cases followed in which the Supreme Court consistently reiterated its reliance upon the personal nature of UM coverage, the reasonable expectation that payment of separate premiums results in separate coverages, and the public policy against provisions which deny such coverage. *Ohio Casualty Ins. Co. v. Stanfield,* Ky., 581 S.W.2d 555 (1979); *Hamilton v. Allstate Ins. Co.,* Ky., 789 S.W.2d 751 (1990); *Chaffin v. Farm Bureau Ins. Co., supra.*

In *Allstate Ins. Co. v. Dicke,* Ky., 862 S.W.2d 327 (1993), the Court was called upon to determine whether a similar result should be obtained regarding the stacking of UIM coverages. In discussing the differences between UM and UIM coverage, the Court stated:

> In substance, we believe the distinction between the uninsured and underinsured statutes is more illusory than real. Under the former, the insured must get the coverage unless it is rejected and under the latter, the insured must get the coverage if it is requested. While the statutory framework required appellee's decedent to take an affirmative step to obtain the coverage he wanted, that step was taken and he thus became a mandatory insured. As such, the public policy with respect to statutory coverage described in *Hamilton* is as applicable here as there.

*Id.* at 329.

Hamilton points out that *Chaffin* and *Dicke* are distinguishable in that they both involved a single carrier. Nonetheless, based upon the current public policy supporting stacking, it is evident that the identity and number of carriers is irrelevant. The

considerations thus far focus solely upon the reasonable expectations of an insured who purchases separate items of coverage. Our Supreme Court has mandated that UM and UIM coverage is personal to the insured and, once provided, it cannot be taken away through the use of anti-stacking provisions. Therefore, we must conclude that the trial court was correct in finding that the Gibsons had available to them UIM coverage from USF&G, Hamilton, and USAA. If anything, we find even more reason for allowing multiple UIM coverage from three separate policies rather than from one policy by one company covering three vehicles.

■ Having determined that all three UIM coverages are available, we now turn to the issue of apportionment. The trial court initially ordered a fractional apportionment of the respective policy limits, but subsequently opted for an equal 1/3 division among the three carriers. We are of the opinion that both of these alternatives are flawed.

Section IV(B)(5)(a) of the Business Auto Coverage Form issued by USF&G, covering the Lincoln involved in the accident, has an "Other Insurance" clause which states: "For any covered 'auto' you own, this coverage form provides primary insurance." In addition, the "Other Insurance" clause contained in Hamilton's policy provides:

OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, **any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance** (emphasis added).

The "Other Insurance" clause of USAA's policy is substantially similar.

The USF&G policy is clear on its face that the coverage it provides for the Lincoln is primary to any other coverage. Further, as previously noted, USF&G now concedes that the Lincoln is not owned by Dr. Gibson individually, but rather by his professional service corporation. A reading of each "Other Insurance" clause, together with a simple sense of fairness, leads us to the conclusion that USF&G must be primarily liable for any excess judgment up to its policy limits before Hamilton or USAA become secondarily liable.

USF&G concedes that it provides primary coverage for the Lincoln but argues that both Hamilton and USAA also provide primary coverage. USF&G has cited this Court to two decisions from other jurisdictions holding that the phrase "any other collectible insurance", as used in the last sentence of the "other insurance" clause in the Hamilton and USAA policies, is limited to liability and other types of coverage, and does not include any other underinsured coverage.[1] We have reviewed these decisions and do not find that they comport with the reasoning and logic employed in Kentucky and therefore do not deem them persuasive. Therefore, the only tenable solution we can reach is that, based upon the plain language of the policies, USF&G must be primarily responsible for the excess judgment up to its policy limits of $100,000.

■ Assuming that the amount for which the Gibsons agreed to settle exceeds $200,000, $100,000 from Turner and $100,000 UIM from USF&G, Hamilton and USAA shall be secondarily liable. The "other insurance" clause contained in both the Hamilton and USAA policies provides that coverage for a non-owned vehicle is "excess over any other collectible insurance". Since both applicable policies contain excess clauses, such is effectively nullified and Hamilton and USAA shall be deemed co-insurers with the obligation to provide pro rata coverage toward any excess amount remaining after USF&G has exhausted its limits. *See, Hancock v. Western Casualty & Surety Co.,* 154 F.Supp. 164 (E.D.Ky.1957).

**1.** *United States Fidelity & Guar. Co. v. Sandt,* 854 P.2d 519 (Utah 1993); *Barker v. Lightning Rod Mut. Ins. Co.,* 90 Ohio App.3d 190, 628 N.E.2d 128 (1993).

Because we do not know the amount of the Gibsons' settlement agreement, it is impossible for us to determine Hamilton's and USAA's exposure. USAA's limits are $300,000 per person and $500,000 per accident, and Hamilton's limits are $500,000 per accident. Whether the pro rata shares will be 3/8 and 5/8, respectively, or equal at 5/10 and 5/10 will depend upon the amount of Nancy's and Rachel's claims, individually, and whether either claim was satisfied by USF&G's primary coverage. Even if multiple claims are involved, it is conceivable that only one claim will exist against the excess UIM coverage provided by USAA and Hamilton, if all but one original claim are satisfied fully with proportionate shares of Turner's $100,000 and USF&G's $100,000. The final determination of which carrier owes how much to whom must necessarily be made by the trial court, which has the full knowledge of the facts and settlement amount.

Finally, USF&G argues that the trial court erred in denying its motion to compel discovery of the assets of the tort-feasor, Turner. We agree with the trial court that such information was not relevant nor discoverable at the time the request was made. However, the action has now been settled, and we have concluded that USF&G is to be responsible for the first $100,000 of the excess settlement. In addition, USF&G has preserved its subrogation rights against Turner by substituting payment of the $100,000 offered by Turner's liability carrier. Therefore, we hold that on remand the trial court must allow discovery of any and all of Turner's assets.

We reverse and remand this action to the Barren Circuit Court for the issuance of an order in accordance with this opinion.

All concur.