**GRANGE PROPERTY AND CASUALTY COMPANY,**
Appellant

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY,**
Appellee.

No. 2013–CA–000228–MR.

Court of Appeals of Kentucky.

Sept. 12, 2014.

As Modified Sept. 26, 2014.

Sandra Spurgeon, William W. Tinker, III, Lexington, KY, for Appellant.

William J. Baird, IV, James M. Kennedy, Pikeville, KY, for Appellee.

Before CLAYTON, COMBS, and STUMBO, Judges.

## OPINION

CLAYTON, Judge:

Grange Property and Casualty Company (hereinafter "Grange") appeals the Pike Circuit Court's order that granted the summary judgment motion of Tennessee Farmers Mutual Insurance Company (hereinafter "Tennessee Farmers") and denied Grange's motion for summary judgment.

Presented with a choice of law question, the trial court decided that under the mod-

ern test, that is, which state "has the most significant relationship to the transactions and the parties," Tennessee law was applicable regarding the priority of the uninsured motorist (UM) coverage between Grange and Tennessee Farmers. Restatement (Second) Conflicts of Law § 188 (1971).

Further, the trial court determined that Grange's UM policy provided primary coverage to the injured party and Tennessee Farmers' policy provided secondary coverage. Additionally, based on Tennessee law, Tennessee Farmers' secondary coverage for Ferlin Pruitt was extinguished since the injured party had collected over $100,000.00 in workers' compensation benefits. After careful consideration, we affirm.

## FACTS

A motor vehicle accident occurred on December 27, 2010, in Pike County, Kentucky, between Allison Comer and Ferlin Pruitt. Comer was an uninsured motorist at the time of the accident. Pruitt was operating a vehicle owned and insured by his employer, Drill Steel Services. Drill Steel Services insured Pruitt's vehicle under a policy issued by Grange, which provided UM coverage. The Grange policy limits for the UM coverage were $1,000,000.00. Pruitt was also covered by a personal insurance policy issued by Tennessee Farmers. The Tennessee Farmers' policy also provided UM coverage with a $100,000.00 limit. Both insurance companies' policies contained "other insurance" clauses.

On March 17, 2011, Pruitt filed a complaint against Grange, Tennessee Farmers, and Tommy R. May, in his capacity as public administrator of the estate of Allison J. Logan Comer. In the complaint, Pruitt alleged that the decedent, Comer, negligently crossed the center line and struck his vehicle causing him severe bodily injury. Pruitt also asserted that Comer's vehicle was uninsured and underinsured when the collision occurred. (It was later determined that Comer was uninsured.) Further, he asserted a UM claim against both insurance companies and sought recovery to the extent of the liability of the uninsured Comer.

Grange received a demand from Pruitt to settle his claim for $1,000,000.00 in exchange for the company's full release and discharge from any and all liability arising from the accident. Pruitt never made a demand to Tennessee Farmers. On October 19, 2011, the trial court granted Grange's motion to file a cross-claim against Tennessee Farmers regarding priority of UM coverage. The cross-claim sought judgment for the $100,000.00 based on Kentucky's *pro rata* law. Tennessee Farmers answered the cross-claim and asserted that under Tennessee law, its policy was not responsible for UM since Tenn. Code Ann. (TCA) § 56–7–1201 et seq., and TCA 56–7–1202 were affirmative defenses to the priority of coverage.

A settlement was reached between Pruitt and Grange after which an agreed order of partial dismissal was entered. Grange, however, continued its cross-claim against Tennessee Farmers regarding the applicability and priority of UM coverage and the choice of law for such a determination. Grange filed a motion for summary judgment on August 20, 2012, and Tennessee Farmers responded by filing its own motion for summary judgment.

The trial court heard oral arguments on September 28, 2012. On January 2, 2013, the trial court entered findings of fact, conclusions of law, and judgment in favor of Tennessee Farmers and denied Grange's motion for summary judgment, which resulted in the dismissal of Grange's

cross-claim. Grange now appeals the judgment.

## STANDARD OF REVIEW

When an appellate court reviews a trial court's decision to grant summary judgment, the appellate court must determine whether the trial court correctly found that there were no genuine issues of material fact. Kentucky Rules of Civil Procedure (CR) 56.03. Since summary judgment involves only legal questions and the existence of any disputed material issue of fact, an appellate court need not defer to the trial court's decision and reviews the issue *de novo*. The material facts in this case are not in dispute; and thus, the questions presented are legal ones concerning which state's law applies in ascertaining the scope and priority of coverage provided by the insurance contracts. *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App.2001).

## ANALYSIS

As framed by the parties, the issue before us is whether Tennessee or Kentucky law governs this insurance coverage dispute regarding priority of coverage between the two insurance companies' UM coverage. In other words, the trial court was required to determine the priority between Grange's policy for Pruitt's employer and Pruitt's personal policy under Tennessee Farmers. Grange asserts that Pruitt is a second-class insured under his employers' insurance policy and a first-class insured under Tennessee Farmers. In contrast, Tennessee Farmers maintains that Pruitt was a first-class insured under both policies.

In addition, the parties dispute whether Kentucky or Tennessee law is the appropriate law to ascertain the priority of coverage issue. Grange argues that the trial court erred when it decided that Tennessee had the most significant relationship to the transaction and the parties, and therefore, applied Tennessee law to ascertain the priority of coverage. To counter, Tennessee Farmers argues that the trial court's decision was correct since TCA 56–7–1201 et seq., and TCA 56–7–1202 were affirmative defenses to the priority of coverage.

Since Kentucky and Tennessee laws differ regarding priority of coverage in insurance disputes, initially, we direct our attention to the choice of law issue.

*Tennessee or Kentucky Law*

Here, the dispute arises between two insurance companies as to whether Tennessee Farmers should reimburse Grange under its UM coverage for Pruitt. Grange has already paid Pruitt the limits of its UM coverage. Grange argues that because both insurance policies have excess insurance clauses, these clauses are, under Kentucky law, nullified and the insurers are deemed co-insurers with the obligation to provide *pro rata* coverage toward any excess amount remaining. *Hamilton Mut. Ins. Co. v. U.S. Fidelity and Guar. Co.*, 926 S.W.2d 466, 470 (Ky.App.1996).

However, before applying Kentucky law, we must ascertain which state's law is relevant. As noted in *State Farm Mut. Auto. Ins. Co. v. Hodgkiss–Warrick*, 413 S.W.3d 875, 878 (Ky.2013), Kentucky courts have traditionally applied § 188 of the Restatement (Second) of Conflict of Laws (1971) to resolve choice of law issues that arise in contract disputes. In *Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky.1977), the Kentucky Supreme Court adopted the approach found in Restatement (Second) of Conflict of Laws § 188(1) (1971), that is, the choice of law is based on which state has the most significant relationship to the transaction and the parties.

Under the applicable section, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Id.* § 188(1). Among the factors a court uses to make such a determination are: the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties. *Id.* § 188(2).

Further, Restatement (Second) of Conflict of Laws § 193 (1971) specifically comments about choice of law for insurance policies when it states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

First, we observe the principles stated in § 6:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Thus, we look to the relevant section of the Restatement to decide which state has the most significant relationship to the transaction and the parties. *Id.* at § 188(1).

To decide the most significant relationship to the transaction and the parties, we observe that the issue herein is Pruitt's personal auto insurance contract with Tennessee Farmers. Our analysis of the "significant relationship to the transaction," in the case at bar, revolves around the construction and application of this insurance policy. Consequently, the significant transaction for this analysis is the interpretation of the insurance contract. As succinctly elucidated in a federal case from Texas,

> In determining what law should be applied, courts look to the state with the most significant relationship to the parties and the issues. *W.R. Grace & Co. v. Continental Casualty Co.,* 896 F.2d 865, 873 (5th Cir.1990); *Truehart v. Blandon,* 884 F.2d 223, 226 (5th Cir.1989); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). In cases involving the interpretation of insurance contracts and the priority of coverage, such as the instant case, the relevant parties are the insurance companies themselves. Similarly, the relevant issues are those surrounding the formation and delivery of the contract and the dispute regarding priority of coverage.

*See generally, W.R. Grace,* 896 F.2d at 873.

*St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 888 F.Supp. 1372, 1379 (S.D.Tex. 1995).

 Therefore, in cases such as this one which involve the interpretation of insurance contracts and the priority of coverage, the relevant parties are the insurance companies themselves. Similarly, the relevant issues are those surrounding the formation and delivery of the contract and the dispute regarding priority of coverage.

The pertinent contract is with Tennessee Farmers, which is incorporated in the state of Tennessee and only writes insurance coverage in Tennessee, to Tennessee residents, on vehicles titled and garaged in Tennessee. In addition, Pruitt's insurance contract with Tennessee specifically states that "[t]he laws of the State of Tennessee shall govern the validity, construction, and interpretation, and effect of this policy."

Reviewing the factors listed in Restatement § 188(2)—the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties—we observe that Tennessee Farmers' auto insurance policy was negotiated and contracted in Tennessee; the place of performance at the time of contracting was Tennessee; the location and the subject matter of the contract was Tennessee; and, the place of performance, as intended by the parties, was Tennessee since Pruitt, in procuring the insurance, stated that his residence was Tennessee.

Since the issue here is the construction and application of the Tennessee insurance contract, the above-enumerated factors far outweigh Grange's arguments that Kentucky law should apply since the accident occurred in Kentucky while Pruitt was driving a vehicle, insured by Grange, as an employee of a Kentucky company. In our estimation, the significant transaction is not the accident but the interpretation of the UM coverage provided by Tennessee Farmers' insurance contract. Thus, we conclude that Tennessee law, rather than Kentucky law, governs the insurance contract dispute. *See State Farm Mut. Auto. Ins. Co. v. Hodgkiss–Warrick,* 413 S.W.3d at 879. Next, we address the implications of Tennessee law with regards to the priority of coverage between the two insurance companies.

*Tennessee—Priority of coverage*

The priority of coverage of uninsured motorist policies under Tennessee law is governed by TCA § 56–7–1201(b)(3)(A) and (B):

(3) With respect to bodily injury to an insured while occupying an automobile not owned by the insured, the following priorities of recovery under uninsured motorist coverage apply:

(A) The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage;

(B) If uninsured motorist coverage on the vehicle in which the insured was an occupant is exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the insured is a named insured shall be applicable as excess coverage to the policy described in subdivision (b)(1); provided, that if the insured is covered as a named insured under more than one (1) policy, then only the policy with the highest limits of uninsured motorist coverage shall apply;

 Similarly, the UM coverage in Tennessee Farmers' policy's "Priority and Applicability of Coverages" clause says:

3. If a covered person sustains bodily injury while occupying a vehicle that he or she does not own, the following priorities of recovery under uninsured motorist coverage apply:

a.) The uninsured motorist coverage on the auto which the covered person was occupying shall be the primary uninsured motorist coverage;

b.) If uninsured motorist coverage on the auto in which the covered was an occupant is exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the covered person is a named insured shall be applicable as excess coverage to the policy referred to and described in section 1; provided, if the person is covered as a named insured under more than one (1) policy, then only the policy with the highest limits of uninsured motorist coverage shall apply;

Under the plain meaning of the Tennessee statute and the language of the policy, Grange is the primary insurer of Pruitt because its insurance covered the vehicle he was driving when the accident occurred. Pruitt had two policies providing UM coverage: one policy provided the primary insurance (Grange) and the other policy provided excess coverage (Tennessee Farmers).

As an aside, we also note that Section IV(B)(5)(a) of Grange's Business Auto Coverage form says in the "other insurance clause" that "for any covered auto you own, this Coverage Form provides primary coverage." Grange argues that the named insured was Drill Steel Services, so the company, rather than Pruitt, was the primary insured. This contention does not obviate that Drill Steel Services owned the vehicle driven by Pruitt. Accordingly, this contract language also rein-

forces that Grange was the primary insurer.

The statutory and policy language provide that "if the insured is covered as a named insured under more than one (1) policy, then only the policy with the highest limits of uninsured motorist coverage shall apply." Here, Grange's policy provided UM coverage in the amount of $1,000,000.00 and Tennessee Farmers' in the amount of $100,000.00. But since Pruitt was not a named insured under Grange's policy, Tennessee Farmers would be considered excess insurance.

■ So, we turn to TCA § 56–7–1205, which explains that Tennessee law allows insurers to set off from their UM coverage the amount of workers' compensation benefits received as the result of a motor vehicle accident.

Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured under the policies been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55–12–107, or the uninsured motorist liability limits of the insured's policy if the limits are higher than the limits described in § 55–12–107. The forms of coverage may include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits.

Next, we examine the language regarding workers' compensation benefits in Pruitt's Tennessee Farmers' policy. Part D and E UM coverage of the policy has a "What is Not Covered Section" that says, in part:

2. This coverage does not apply to the extent that it directly or indirectly benefits:

 a. any provider of workers' compensation or disability payments.

Because of the injuries sustained in the accident, Pruitt received over $100,000.00 in workers' compensation benefits. Thus, under Tennessee law, Tennessee Farmers does not have to pay Grange any excess insurance based on this limitation.

Finally, we note that both parties make arguments to this Court regarding whether Pruitt is a first-class or second-class insured under these competing policies. That issue might have been significant if the legal analysis had been under Kentucky law. But it was not. Therefore, we will not address the arguments regarding this issue. Instead, we believe that the pertinent issue is a choice of law question regarding which state's law governed the interpretation of the competing UM coverage between the two insurance companies.

## CONCLUSION

We affirm the decision of the Pike Circuit Court that Tennessee law applied to the determination of the priority of the UM coverage between Grange and Tennessee Farmers, and hence, under this jurisprudence, Grange provided primary coverage and Tennessee Farmers provided secondary coverage.

ALL CONCUR.