Tina MURPHY, in her Capacity as Mother of Austin Goodpaster; and Tina Murphy, as Personal Representative for the Estate of Austin Goodpaster, Appellant,

v.

KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.

No. 2001–CA–001716–MR.

Court of Appeals of Kentucky.

Nov. 8, 2002.

Discretionary Review Denied by Supreme Court Oct. 15, 2003.

Stacey Hardin Hibbard, Lebanon, KY, for Appellant.

R. Craig Reinhardt, Lexington, KY, for Appellee.

Before: EMBERTON, Chief Judge, JOHNSON and SCHRODER, Judges.

*OPINION*

SCHRODER, Judge.

This is an appeal from a summary judgment entered in favor of the insurance company in an action on a claim for underinsured motorist benefits under policies of two household members who were not involved in the single-car accident in a car owned by another household member which killed a minor child in the household. The estate of the minor child argues that the regular-use exclusion in the policies of the two household members is against public policy and should not be applied so as to bar recovery of underinsured motorist benefits by the minor child. As the regular-use exclusion has been previously upheld to be not against public policy, the lower court correctly found that the claim for underinsured motorist benefits was barred and, thus, we affirm.

On March 22, 2000, Austin Goodpaster, who was fourteen (14) years of age at the time, was killed in a single-car accident while riding as a passenger in a car which his brother, Dale Goodpaster, was driving. The car was owned and insured by Austin's mother, Tina Murphy. At the time of the accident, Austin was living in a household which included Tina Murphy, his stepfather, Brian Murphy, and his sister, Shannon Goodpaster. It is undisputed that the negligent conduct of Dale Goodpaster was the cause of the car accident.

Tina Murphy's policy on the car in question had liability coverage of $25,000, which her insurer, Kentucky Farm Bureau ("Farm Bureau"), paid to the estate of Austin Goodpaster. Both Brian Murphy and Shannon Goodpaster owned their vehicles, which they both insured through separate policies with Farm Bureau, which both contained underinsured motorist (UIM) coverage. After collecting the liability limits of Tina Murphy's policy, the estate of Austin Goodpaster filed claims with Farm Bureau for the UIM benefits available on Brian's and Shannon's policies. Farm Bureau refused to pay the claims on either policy, relying on the provision in each policy which excluded UIM benefits if the underinsured vehicle at fault was "owned by or furnished or available for the regular use of you or any family member." The estate thereafter filed suit against Farm Bureau to collect the UIM benefits. Farm Bureau filed a motion for summary judgment, maintaining that the above regular-use exclusion in the policies barred the estate from collecting UIM benefits. The trial court agreed and entered summary judgment in favor of Farm Bureau. This appeal by Austin's estate ("the estate") followed.

■ Both Shannon's and Brian's policies with Farm Bureau stated that they would pay damages an insured (which includes family members under the definition of "insured") is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" due to bodily injury sustained by the insured in an accident, when the limits of the liability policies have been exhausted by the payment of judgments or settlements. The provision in those policies referred to by us and other courts as the "regular-use exclusion" states as follows:

> However, "underinsured motor vehicle" does not include any vehicle:
>
> . . . .
>
> Owned by or furnished or available for the regular use of you or any "family member."

"Family member" is defined in both policies as "a person related to you by blood, marriage or adoption, who is a resident of your household."

Since the vehicle involved in the accident was owned by Shannon's and Brian's family member (Tina Murphy) and was available for the regular use by family members, it clearly failed to meet the definition of "underinsured motor vehicle" under both policies. The estate does not dispute that fact. Rather, the estate insists that the regular-use exclusion as applied to the facts in the instant case is against public policy.

Regular-use exclusions from UIM coverage have been upheld as not being against public policy in other cases within this jurisdiction, which the trial court relied on in the present case in entering summary judgment. *Motorists Mutual Insurance Co. v. Glass*, Ky., 996 S.W.2d 437 (1997); *Pridham v. State Farm Mutual Insurance Co.*, Ky.App., 903 S.W.2d 909 (1995); *Windham v. Cunningham*, Ky.App., 902 S.W.2d 838 (1995); *see also Baxter v. Safeco Insurance Co. of America*, Ky.App., 46 S.W.3d 577 (2001). The estate maintains,

however, that there are certain distinguishing facts in the instant case which set it apart from the above cases in terms of public policy.

First, they point to the fact that Brian's and Shannon's vehicles were not involved in the accident. It is true that in *Pridham*, 903 S.W.2d 909, and in *Windham*, 902 S.W.2d 838, the injured passengers sought UIM benefits in a single-car accident from the insurance carrier on the vehicle in which they were riding in the accident and not against insurance carriers on vehicles not involved in the accident.[1] In those cases, the Courts held that the statutory requirement that an insurer must provide UIM coverage presumes that the vehicle at fault is a separate vehicle from the vehicle from which the injured party is seeking UIM benefits.

In *Glass*, 996 S.W.2d 437, however, the injured passenger in a single-car accident, who owned the vehicle in question, sought UIM benefits not only from his own insurance carrier on that vehicle, but also from his parents' separate insurance policy on vehicles not involved in the accident. Our Supreme Court held that the injured party could not recover UIM benefits from either policy because of an offset provision that existed in KRS 304.39–320 which was later repealed in 1988. However, the Court goes on to state:

> Even if the offset provision did not apply in this case, [the injured party] still could not recover under the UIM coverage of these policies....
>
>     . . . .
>
> ... Both policies exclude from the definition of an underinsured vehicle any vehicle "[o]wned by or furnished or available for the regular use of you or any family member," which clearly applies to the 1980 pickup truck involved in

the accident. The validity of this exclusion was discussed at length by the Court of Appeals in *Windham v. Cunningham, supra,* at 841. We agree with the Court of Appeals' analysis and with its conclusion that the exclusion is not against public policy. "The purpose of UIM coverage is not to compensate the insured or his additional insureds from his own failure to purchase sufficient liability insurance." *Id.*

>     . . . .
>
> ... There is nothing ambiguous about this exclusion. A vehicle owned by or furnished or available for the regular use of the named insured or a family member is not an "underinsured vehicle." The obvious reason for the exclusion is that the named insured can avoid the fact of underinsurance by simply purchasing additional liability insurance coverage for his vehicle.

*Glass,* 996 S.W.2d at 449–450 (footnote omitted.)

The estate urges us to reject the dicta in *Glass* and find that the regular-use exclusion as applied to the facts in the instant case is against public policy. Although the above-stated language in *Glass* is dicta, this Court is loath to disregard it in making new law based on public policy. "[I]t is not a proper function of this Court to overturn the rules of law established by our Supreme Court or to enunciate a new public policy in the absence of a clear legislative mandate to do so." *Riley v. West Kentucky Production Credit Ass'n, Inc.,* Ky.App., 603 S.W.2d 916, 918 (1980).

The estate further insists that the present case is distinguishable by the fact that Austin was an innocent minor who had no control over how much liability coverage his mother had on the vehicle and who drove the vehicle, *citing Lewis by Lewis v. West American Insurance Co.,* Ky., 927

---

**1.** In the case of *Windham,* both the policy and vehicle were owned by the injured party.

S.W.2d 829 (1996). In *Lewis,* our Supreme Court struck down as contrary to public policy a household exclusion which limited the liability coverage of family members to the minimum amount of coverage statutorily required, although the policy provided significantly greater liability coverage for non-family members. The Court rejected the possibility of collusion as a legitimate basis for such household exclusions, pointing out that many of those denied full coverage under family exclusions are innocent minors who are incapable of fraud or collusion. *Lewis,* 927 S.W.2d at 833. However, the regular-use exclusion at issue in the present case does not deny a family member general liability coverage; it denies UIM coverage if the underinsured vehicle is owned by or for the regular use of the insured or a household member. The justification for the regular-use exclusion is not the possibility of collusion, but rather the fact that the insured or another family member has control over how much liability coverage is purchased. While Austin did not have control over how much liability coverage he had in this accident, his mother did have such control because she owned and insured the car in which he was riding. Unlike the parent in *Lewis,* Tina Murphy had the option of purchasing greater liability coverage for her child. As this Court stated in *Hamilton Mutual Insurance Co. v. U.S. Fidelity & Guaranty Co.,* Ky.App., 926 S.W.2d 466, 469 (1996), "If a different result is to come from these differences [in these cases], our Supreme Court must direct it."

For the reasons stated above, the judgment of the Mercer Circuit Court is affirmed.

ALL CONCUR.