**STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Appellant**

v.

**Karen HODGKISS–WARRICK,
Appellee.**

No. 2011–SC–000266–DG.

Supreme Court of Kentucky.

Sept. 26, 2013.

Rehearing Denied Dec. 19, 2013.

Douglas Loy Hoots, Lexington, Tyler Griffin Smith, Timothy Edward Davis, Lexington, Counsel for Appellant.

Charles Clay Adams, Jr., Lexington, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Pennsylvania resident Karen Hodgkiss–Warrick brought suit to recover for injuries she sustained in a motor vehicle accident near Mt. Vernon, Kentucky while riding in a vehicle driven by her daughter, Heather, also a Pennsylvania resident. Because her daughter's liability coverage was insufficient to fully compensate Hodgkiss–Warrick, she included a claim against her own insurance carrier, State Farm Mutual Automobile Insurance Company, for underinsured motorist coverage pursuant to a policy issued in Pennsylvania and covering a vehicle that Hodgkiss–Warrick registered, garaged and used exclusively in Pennsylvania. This underinsured motorist (UIM) claim against State Farm by a Pennsylvania resident injured in Kentucky gives rise to the choice of law and public policy issues which are now before us.

Under longstanding choice of law principles recognized by this Court, Pennsylvania law governs the dispute between Hodgkiss–Warrick and her carrier regarding policy coverage, and both the trial court and Court of Appeals ruled accordingly. However, the two courts reached entirely different results. Applying the plain language of the insurance contract and Pennsylvania law, the trial court concluded that Hodgkiss–Warrick was not entitled to underinsured motorist coverage because her policy disallowed coverage when she was injured in an underinsured vehicle owned or regularly used by a "resident relative." Hodgkiss–Warrick resided

with her daughter, rendering Heather a "resident relative" and foreclosing any underinsured motorist coverage for Hodgkiss–Warrick on these facts. The Court of Appeals acknowledged that Pennsylvania law applies but found a recent "shift" in Kentucky public policy that would prohibit enforcement of a policy provision that disallows UIM coverage when the insured is injured in a vehicle owned or regularly used by a relative with whom the insured resides. Accordingly, the Court of Appeals panel adjudged Hodgkiss–Warrick was entitled to UIM coverage despite the plain language of her policy. We granted State Farm's motion for discretionary review and reverse. Pennsylvania law applies to this insurance coverage dispute and, contrary to the appellate panel's surmise about Kentucky public policy, there is no prohibition on the type of UIM exclusion at issue here, an exclusion expressly approved by this Court in *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437 (1999).

## RELEVANT FACTS

The underlying facts are not in dispute. On May 17, 2008, Karen Hodgkiss–Warrick suffered serious injuries in a two-vehicle accident in Mt. Vernon, Kentucky, at the intersection of Kentucky Highway 25 and the northbound entrance ramp to Interstate 75. Hodgkiss–Warrick was a passenger in a vehicle leased, insured, and operated at the time by her twenty-three year-old daughter, Heather Warrick. Also in the car were two friends, Pamela and Heather Reynolds, another mother-daughter pair. The four women, all Pennsylvania residents, had traveled from Pennsylvania to Burnside, Kentucky, where Hodgkiss–Warrick hoped to buy a special breed of puppy. They were on their way back to Pennsylvania when the accident occurred. Pamela and Heather Reynolds were also injured in the accident, as was the driver of the other car,

Natalie Bussell, a resident of Brodhead, Kentucky. Hodgkiss–Warrick, the Reynoldses, and Bussell all brought tort actions against Heather Warrick in the Rockcastle Circuit Court, and those claims were eventually settled for the limits of Heather's liability insurance coverage with GEICO— $25,000 per person and $50,000 per accident, the minimum liability coverage required under Kentucky law. Kentucky Revised Statute (KRS) 304.39–100 and KRS 304.39–110. It is undisputed that Hodgkiss–Warrick's share of the settlement fell far short of the medical expenses she incurred.

Given that shortfall, Hodgkiss–Warrick included with her tort claim a claim for underinsurance benefits pursuant to two policies issued by State Farm. One of the policies was issued to Hodgkiss–Warrick in November 2007 for her own vehicle, and it provides underinsured motorist benefits of up to $50,000 per person and $100,000 per accident. The other policy was first issued to Hodgkiss–Warrick's husband, John Warrick, in 2001, and was certified to have been in effect when the accident occurred in May 2008. That policy, covering John Warrick's vehicle and under which he is the only named insured, also provides UIM benefits of up to $50,000 per person and $100,000 per accident.

State Farm denied both claims. With respect to John Warrick's policy, the company noted that an "insured" under that policy's underinsurance provisions is defined, in pertinent part, as "(1) you [and] (2) resident relatives." In pertinent part, the policy defines "you" as "the named insured ... [and] the spouse of the first person shown as a named insured if the spouse resides primarily with that named insured." Similarly, "resident relatives" are limited to persons who "reside[ ] primarily with the first person shown as a named insured on the Declarations Page."

Because at the time of the accident Hodgkiss–Warrick and John Warrick had been separated and living apart for about eight-and-a-half months, State Farm maintained that Hodgkiss–Warrick did not qualify as an insured under her husband's policy. Hodgkiss–Warrick has not pursued UIM coverage under John Warrick's policy before this Court and that claim is not before us.

As for the second policy, Hodgkiss–Warrick's own State Farm policy, she does not contend that she is entitled to underinsured benefits under the plain terms of the insurance contract. The policy provides that the company "will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle," but it plainly excludes from the definition of "underinsured motor vehicle" "a land motor vehicle: ... (2) owned by, rented to, or furnished or available for the regular use of you or any resident relative." [1] "Resident relative" is defined in pertinent part as "a person, other than you, who resides primarily with the first person shown as a named insured oh the Declarations Page and who is: (1) related to that named insured or his or her spouse by blood ..." Shortly after Hodgkiss–Warrick separated from her husband, she and Heather moved to Oakdale, Pennsylvania into a former duplex which had been renovated and converted to a single residence. Hodgkiss–Warrick and her daughter had been living together in that residence for about eight months at the time of the accident. State Farm maintains that Heather was a "resident relative," as defined in Hodgkiss–Warrick's policy, and thus that the vehicle leased to Heather is not an "underinsured motor vehicle" under the policy's terms. Hodgkiss–Warrick concedes that that is the policy's plain

meaning, but she contends, and the Court of Appeals agreed, that in the circumstances of this case the exclusion of Heather's vehicle from the policy's UIM coverage so offends the public policy of this state that Kentucky law, rather than Pennsylvania law, should apply and that under Kentucky law a "regular use" provision excluding UIM coverage is unenforceable.

### ANALYSIS

#### I. Under Our Choice of Law Principles, Pennsylvania Law Governs the Insurance Coverage Dispute.

The questions presented are all purely legal ones concerning the scope of coverage provided by an insurance contract. Our standard of review, therefore, is *de novo. Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872 (Ky.2006). We may begin our analysis by noting that for many years now we have applied § 188 of the *Restatement (Second) of Conflict of Laws* (1971) to resolve choice of law issues that arise in contract disputes. In *Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky. 1977), this Court abandoned the traditional rule according to which a contract's validity was determined by reference to the laws of the state in which it was made and adopted the *Restatement's* approach. Under the applicable section,

> [t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

*Restatement (Second) Conflict of Laws* § 188(1) (1971). Among the factors a court making that determination should consider are the place or places of negoti-

---

1. This type of provision is generally referred to as a "regular use" provision.

ating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties. *Id.* § 188(2). With respect to casualty insurance contracts in particular, a key factor is the expectation of the parties concerning the principal location of the insured risk. *Id.* § 193. *Lewis* involved two Indiana residents injured in a motor vehicle accident in Kentucky as a result of the negligence of an uninsured Kentucky motorist. This Court invoked § 188 in concluding that Indiana law would govern the dispute between the injured Indiana residents and the insurance carrier as to uninsured motorist coverage available under two policies issued in Indiana to cover automobiles registered, garaged and principally used in that state.[2] *Lewis,* 555 S.W.2d at 581–82.

 Here, Hodgkiss–Warrick, a Pennsylvania resident, entered into an auto insurance contract in Pennsylvania that makes specific reference to Pennsylvania law and that covers, primarily, the vehicle she registered, garaged, and used exclusively in Pennsylvania.[3] The fortuitous fact that the accident occurred in Kentucky is far outweighed by the significant relationship Pennsylvania has with the parties and the insurance transaction, and so, absent some compelling reason not to apply our general choice-of-law rule, Penn-

sylvania law should control. *See Lewis,* 555 S.W.2d at 579 (applying Indiana law to insurance coverage dispute between Indiana residents injured in Kentucky and their insurer); *Poore v. Nationwide Mut. Ins. Co.,* 208 S.W.3d 269 (Ky.App.2006) (same); *Bonnlander v. Leader National Ins. Co.,* 949 S.W.2d 618 (Ky.App.1996) (same); *Snodgrass v. State Farm Mut. Auto. Ins. Co.,* 992 S.W.2d 855 (Ky.App. 1998) (applying Virginia law to Virginia insureds' dispute with their carrier over UIM coverage for Kentucky accident).

## II. Kentucky Public Policy Does Not Prohibit the Policy Provision at Issue and, Therefore, Kentucky Law Does not Override Pennsylvania Law in this Case.

 Hodgkiss–Warrick maintains that there is such a compelling reason to refrain from applying Pennsylvania law, namely Kentucky public policy disfavoring the type of policy exclusion which precludes her recovery of UIM benefits. As noted above, § 188 of the *Restatement (Second)* provides that the rule of that section is to be applied in light of the more general choice-of-law principles listed in § 6. That section provides that choice-of-law rules are to be applied in accord with the forum state's relevant policies and with basic policies underlying the particular field of law.[4] It is, of course, a well-settled

---

2. One policy was issued to the Indiana driver, James Lewis, and the second policy belonged to his uncle, who was the guardian of James and his brother, the other injured party. The brothers resided with their uncle.

3. According to Hodgkiss–Warrick's response to State Farm's Motion for Summary Judgment, her trip to Kentucky marked the first time Hodgkiss–Warrick had ever been outside Pennsylvania.

4. § 6. Choice–of–Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

principle of general contract law that courts are not to enforce contracts in contravention of public policy. Applying that principle in Hurd v. Hodge, 334 U.S. 24, 34–35, 68 S.Ct. 847, 92 L.Ed. 1187 (1948), the United States Supreme Court stated that.

> [t]he power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States .... Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.

Our Kentucky courts adhere to this same principle. See, e.g., Bishop v. Allstate Ins. Co., 623 S.W.2d 865 (Ky.1981) (refusing to enforce a family or household exclusion provision in an automobile liability insurance contract as violative of Kentucky's mandatory minimum vehicle liability coverage provisions). Hodgkiss–Warrick contends that the "regular use" exclusion in her contract with State Farm for UIM coverage contravenes a Kentucky public policy against family or household exclusions from insurance coverage and in favor of "fully compensating" accident victims, and so should not be enforced in Kentucky regardless of its legality in Pennsylvania. We disagree.

■ Courts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong public policy in controlling laws or judicial precedent. The United States Supreme Court has stated that under federal law public policy will render a contract term unenforceable only if the policy is " 'explicit,' 'well de-

fined,' and 'dominant,' [and may] be 'ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' ' " Eastern Associated Coal Corp. v. United Mine Workers of America, District 17, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting W.R. Grace & Co. v. Intern. Union of Rubber Workers, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), in turn quoting Muschany v. United States, 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed. 744 (1945)). Similarly, § 178 of the Restatement (Second) of Contracts (1979)— "When a Term Is Unenforceable on Grounds of Public Policy"—provides that in the absence of legislation expressly forbidding enforcement, a contract term is unenforceable on public policy grounds only if the policy asserted against it is clearly manifested by legislation or judicial decision and is sufficiently strong to override the very substantial policies in favor of the freedom of contract and the enforcement of private agreements.

Our law is in complete accord. In Zeitz v. Foley, 264 S.W.2d 267, 268 (Ky.1954), our predecessor Court, emphasizing that "contracts voluntarily made between competent persons are not to be set aside lightly," and that "the right of private contract is no small part of the liberty of the citizen," observed that public policy would not bar enforcement of a contract unless "it clearly appears that [the] contract has as its direct object and purpose a violation of the Federal or state constitution, Federal or state statutes, some ordinance of a city or town, or some rule of the common law." More recently, in Kentucky Farm Bureau Mut. Ins. Co. v. Thompson, 1 S.W.3d 475, 476–77 (Ky.1999), we reiterat-

(d) the protections of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

ed that public policy, invoked to bar the enforcement of a contract, is not simply something courts establish from general considerations of supposed public interest, but rather something that must be found clearly expressed in the applicable law.

The "public policy" Hodgkiss–Warrick would have us apply does not meet this standard. Indeed, although Hodgkiss–Warrick refers broadly to our Motor Vehicle Reparations Act (MVRA), KRS 304.39–010 *et seq.*, as somehow implying the "policies" upon which she relies, neither she nor the Court of Appeals panel has identified any specific provision of the MVRA as forbidding the sort of exclusion from underinsured motor vehicle coverage at issue here. In fact, the plain language of the MVRA and our case law precedent are to the contrary.

While the MVRA mandates that Kentucky motorists have minimum liability coverage, KRS 304.39–100 and .39–110, the MVRA unequivocally provides that underinsured motorist coverage is optional. KRS 304.39–320, the section of the MVRA addressing underinsured motorist (UIM) coverage, states in pertinent part as follows:

> Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

KRS 304.39–320(2). Even assuming, doubtful as the assumption may be, that this subsection was intended to apply to insureds with no connection to Kentucky, it is clear that while underinsured motorist coverage must be made available if requested, such coverage is optional in Kentucky and may be waived by the insured. The coverage that must be made available, moreover, may be limited by terms and conditions not inconsistent with the remainder of KRS 304.39–320.[5] Thus, while the statute serves the remedial purpose of protecting auto-accident victims from underinsured motorists who cannot adequately compensate them for their injuries, that purpose has not been raised to the level of a public policy overriding other purposes of the MVRA, such as guaranteeing the continued availability of affordable motor vehicle insurance, or overriding all other considerations of contract construction. KRS 304.39–010.

Indeed, we have held that in statutes providing for optional vehicle coverages, the statutory allowance for "terms and conditions" permits reasonable exclusions from coverage. *Preferred Risk Mut. Ins. Co. v. Oliver*, 551 S.W.2d 574 (Ky.1977) (upholding motorcycle exclusion from uninsured motorist coverage and citing *Commercial Union Ins. Co. v. Delaney*, 550 S.W.2d 499 (Ky.1977)). In *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d at 437, moreover, we held that a "regular use" exclusion from underinsured motorist coverage virtually identical to the exclusion in Hodgkiss–Warrick's policy was not unreasonable: "The validity of this exclusion was discussed at length by the Court of Ap-

---

**5.** Other subsections of the section include subrogation provisions and, as quoted, subsection (2) precludes any set off from the underinsured policy limits for the available liability coverage. *See Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d at 437 (discussing the 1988 statutory amendment precluding set off).

peals in *Windham v. Cunningham*, [902 S.W.2d 838 (Ky.App.1995)] at 841. We agree with the Court of Appeals' analysis and with its conclusion that the exclusion is not against public policy." 996 S.W.2d at 450. Since *Glass*, the General Assembly has not amended the pertinent provisions of KRS 304.39–320, and the Court of Appeals has upheld regular use exclusions from UIM coverage on at least three occasions. *Burton v. Kentucky Farm Bureau Mut. Ins. Co.*, 326 S.W.3d 474 (Ky.App. 2010); *Edwards v. Carlisle*, 179 S.W.3d 257 (Ky.App.2004); *Murphy v. Kentucky Farm Bureau*, 116 S.W.3d 500 (Ky.App. 2002). Although the fact patterns of *Windham*, *Glass* and the subsequent Court of Appeals' cases differ somewhat from each other and from the present case, all but one of them, *Edwards*, involve claims by a household member injured in one household vehicle for UIM benefits provided under a policy or policies covering another or other household vehicles.[6] The gist of these cases is that it is not unreasonable or contrary to the MVRA to exclude UIM benefits in that situation, because otherwise household members would have an incentive to minimize their liability coverage in reliance on less expensive UIM coverage, and because otherwise the insurer is apt to be exposed to substantial risks it was not paid to underwrite. As there is thus no public policy ground precluding the application of Pennsylvania law in this case, the Court of Appeals erred by failing to apply our general choice of law rule, under which Pennsylvania law clearly has precedence. *Cf. Alsidez v. American Family Mut. Ins. Co.*, 282 Neb. 890, 807 N.W.2d 184 (2011) (upholding against public policy challenge a regular use exclusion from UIM coverage); *Nationwide Mut. Ins. Co. v. Viti*, 850 A.2d 104 (R.I.2004) (upholding against public

policy challenge a resident relative's-vehicle exclusion from uninsured motorist coverage); *Ball by and through Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 829 P.2d 897 (1992) (same, discussing Kansas's similar public policy against household exclusions from liability coverage).

■ The result would be the same, moreover, even were we to construe KRS 304.39–320 as establishing a policy against the sort of UIM exclusion at issue here. The question would then become whether the public policy was so strong as to require a Kentucky court to interject Kentucky law into a dispute having none but a fortuitous connection with Kentucky. As our predecessor Court noted in *R.S. Barbee & Company v. Bevins*, 176 Ky. 113, 195 S.W. 154 (1917), the fact that a contract, if made in Kentucky, would not be enforceable as a matter of public policy, does not necessarily mean that it is against public policy to enforce such a contract when valid where made. If the mere fact that Kentucky law differed from a sister state's law were enough to require the application of Kentucky law, after all, then there would be no choice of law question, for Kentucky law would always apply in Kentucky courts. To bar enforcement in the case where the contract was valid where made, the Kentucky public policy against enforcement must be a substantial one, a "well-founded rule of domestic policy established to protect the morals, safety or welfare of *our people.*" *Bevins*, 195 S.W. at 155 (emphasis supplied). Where no Kentucky resident has been affected, rarely will that standard be met. It is not met here where the competing public policies—supposing a Kentucky policy against this UIM exclusion—concern only the balance to be struck between required insurance coverage and insurance affordability, a balance different states have assessed

---

**6.** *Edwards* involved a claim for both liability and UIM benefits under the same policy.

differently. Since here no Kentucky resident is affected, nothing requires a Kentucky court to interfere with the balance Pennsylvania has chosen for its citizens. *Cf. United Farm Family Mut. Ins. Co. v. Frye,* 381 Ill.App.3d 960, 320 Ill.Dec. 639, 887 N.E.2d 783 (2008) (holding that Illinois public policy did not require the application of Illinois law to an Illinois accident involving only Indiana residents insured in Indiana); *Cherokee Insurance Company, Inc. v. Sanches,* 975 So.2d 287 (Ala.2007) (same, declining to apply Alabama law to insurance dispute following accident in Alabama involving Tennessee residents); *Howe v. Howe,* 218 W.Va. 638, 625 S.E.2d 716, 724–25 (2005) (same, declining to apply West Virginia law where dispute involved Ohio residents and Ohio insurance policy; adhering to "the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to its own people."); *Allstate Insurance Company v. Hart,* 327 Md. 526, 611 A.2d 100 (1992) (same, Florida law applied to Maryland accident involving Florida insureds); *Draper v. Draper,* 115 Idaho 973, 772 P.2d 180 (1989) (same, Oregon law applied to Idaho accident involving Oregon insureds).

Hodgkiss–Warrick, of course, takes issue with this result and raises two arguments against it, one primarily legal and one primarily factual. The legal argument runs something like this: In a series of cases, beginning with *Bishop v. Allstate,* 623 S.W.2d at 865, and extending through *Lewis v. West American Ins. Co.,* 927 S.W.2d 829 (Ky.1996), and *State Farm Mut. Auto. Ins. Co. v. Marley,* 151 S.W.3d 33 (Ky.2004), the Court has invoked a broad and seemingly broadening public policy against household or family exclusions from liability coverage, exclusions denying liability benefits to injured members of the tortfeasor's family or household. In *Bishop,* we invalidated such a clause in an automobile policy denying liability benefits to household members altogether; in *Lewis,* we invalidated an automobile-policy family-exclusion clause denying liability benefits in excess of the statutorily required minimum; and in *Marley,* asserting that "the public policy of Kentucky is to ensure that victims of motor vehicle accidents on Kentucky highways are fully compensated," we invalidated such a clause in an Indiana umbrella liability policy, construing the umbrella policy in the context of an automobile accident as an automobile liability policy subject to the MVRA.[7] Given this broad public policy against household exclusions from *liability* coverage, Hodgkiss–Warrick's argument runs, the regular use exclusion from her *UIM coverage* should be disallowed because that exclusion is, in effect, a household exclusion, and because UIM coverage is, in effect, a type of liability coverage.

The Court of Appeals panel agreed with that analysis and opined that *Marley* implicitly overruled *Glass* and the Court of Appeals cases relying on *Glass.* The panel found what it deemed support for that conclusion in *Williams v. State Farm Mut. Auto. Ins. Co,* 255 S.W.3d 913 (Ky.2008), a case in which we held that a regular use exclusion did not apply to the given facts, and thus that UIM benefits should not have been denied. The panel's reliance on *Williams* was misplaced, however, since *Williams* addressed only the scope of the

---

7. The parties in *Marley,* Indiana residents injured in Kentucky and their Indiana insurer, stipulated to the application of Kentucky law.

The choice of law issue, therefore, although referred to by the Court, was not before it.

particular exclusionary clause, not its enforceability as a matter of public policy.[8]

The appellate panel's and Hodgkiss–Warrick's reliance on *Bishop, Lewis*, and *Marley* is similarly wide of the mark. As we explained in *Kentucky Farm Bureau Mut. Ins. Co. v. Thompson*, the family exclusion provisions deemed unenforceable in *Bishop* and *Lewis* and by extension in *Marley*, ran afoul not of some general public policy against family exclusion clauses *per se*, but rather the express provisions of the MVRA mandating that all vehicles operating in the Commonwealth be covered by at least a certain minimum amount of liability insurance. The pertinent public policy, we noted, "was expressly stated by the legislature, and was limited to motor vehicle liability insurance contracts." *Thompson*, 1 S.W.3d at 477 (citing KRS 304.39–010(1)). In *Thompson*, we disavowed any suggestion that the plurality opinion in *Lewis* relied on some purportedly broader public policy against family exclusion provisions generally. *Id.*

As noted above, and as noted in *Glass* and the related Court of Appeals cases, the MVRA evinces no similar policy mandating UIM coverage. It requires only that UIM coverage be made available and allows its availability to be made subject to reasonable terms and conditions. Even if, as Hodgkiss–Warrick argues, the regular use exclusion at issue here has much the same effect as would a family or household exclusion, it is not rendered invalid for that reason. This is so because the MVRA does not invalidate such clauses *per se*, but

only such clauses as tend to defeat the Act's mandates, and the exclusion here, applicable to no more than a handful of the thousands of potentially underinsured vehicles to which Hodgkiss–Warrick might be exposed, clearly does not deprive her of meaningful UIM coverage.

Moreover, although it is true, as Hodgkiss–Warrick notes, that UIM coverage can be conceived as a sort of liability insurance the UIM insured imputes to the underinsured tortfeasor, that theoretical characterization does not turn UIM insurance into liability insurance under *Lewis* and *Marley*. It in no way alters the statutory distinction between the two types of coverage, one of which is mandated and the other of which is not. Nor does it account for the underwriting differences between the two types of coverage, liability generally posing the greater risk and so costing more to cover. That is the point of the regular use exclusion. Generally at least, household vehicles, by virtue of their proximity and availability to the insured, pose a substantially greater risk to the insured than do non-household vehicles. It is not unreasonable for an insurer to segregate those different types of risk; to limit UIM coverage as was done here to, essentially, non-household vehicles; and thus to discourage relatives residing together from attempting to shift the higher household risk from liability insurance to the less costly UIM insurance. This was our conclusion in *Glass*, and nothing in *Bishop, Lewis*, or *Marley*, all liability rather than UIM insurance cases, changes that result.

---

**8.** In *Williams,* two young brothers were killed in a vehicle owned and operated by one of the brothers, Aaron. The estate of the brother-passenger was allowed to recover UIM benefits under the parents' policy because the excluded underinsured vehicles were limited to ones "furnished for" the regular use of a relative. This Court held that the parents did not "furnish" the vehicle involved in the accident to Aaron; he owned it. The Court noted the important distinction between the common exclusion of vehicles "owned by or furnished for" a relative and an exclusion limited to vehicles "furnished for" a relative. The insurance contract's language was determinative of the outcome. Public policy was never mentioned.

As the Court of Appeals noted, there is admittedly broad language in *Marley* which refers to "automobile" policies generally but the occasional general reference in that opinion cannot be divorced from its context. After stating the relevant facts and procedural background, the first sentence of the Court's analysis states: "The critical issue is whether a household exclusion in the personal *liability* umbrella policy as it applies to automobile *liability* coverage violates Kentucky public policy." 151 S.W.3d at 34 (emphasis supplied). When faced with the insurer's argument that the general umbrella liability policy it had issued in that case was an optional coverage that is not governed by the MVRA, this Court stated:

> This Court finds no reason to discriminate between those with minimum coverage required by law and those with higher, optional coverage. *See Lewis* at 833. An umbrella insurance policy must be considered in accordance with the nature of the claims that it is called upon to cover. An umbrella policy was purchased to serve as an extension of the automobile policy limits and any distinction between the automobile liability and an umbrella liability policy is a distinction without a difference.

> We determine that there is no difference between the security provided by an optional umbrella policy and the security provided by mandatory minimum liability coverage. It is clear that the public policy of Kentucky is to ensure that victims of motor vehicle accidents on Kentucky highways are fully compensated. The household exclusion in the umbrella policy as it applies to automobile liability coverage violates that public policy and is void and unenforceable.

151 S.W.3d at 36.

Clearly, the "minimum" coverage referred to is minimum liability coverage;

*Lewis*, on which *Marley* relies, was a case about liability coverage only; and the *Marley* Court construed the umbrella policy "in accordance with the nature of the claims that it is called upon to cover," *i.e.*, a liability claim. *Id.* Indeed, the Court referred to the particular umbrella policy at issue as an "extension" of the family's automobile liability policy. Although Kentucky public policy ensuring vehicle accident victims are fully compensated is referenced, that public policy is the one reflected in the "mandatory" liability provisions of the MVRA. *Id.* In sum, *Marley* speaks solely to liability insurance applicable to motor vehicle accidents and its statement of Kentucky public policy must be read accordingly not as some overarching pronouncement applicable to any and all optional, non-liability coverages such as the underinsured motorist coverage at issue here.

Hodgkiss–Warrick's factual argument against this result is that even if an insured ordinarily should not be allowed to substitute UIM coverage for liability coverage, that is not what happened here. Heather leased her car and insured it before she and her mother moved in together. Hodgkiss–Warrick had nothing to do with the amount of liability coverage Heather obtained, and neither did she make regular use of Heather's vehicle, the trip to Kentucky marking only the second time she had ever been a passenger in it.

■ The exclusion, however, addresses the incentives of a typical household as a whole, not only those of the UIM insured. Without the exclusion, some members of the household could be induced to purchase less liability coverage in reliance on other members' UIM coverage. Regardless of the potential for such incentives, moreover, the exclusion also addresses the

fact that without it an insurer is apt to be exposed to substantial risks of which it was not apprised and for which it was paid no premium. That Heather may not have been hoping to rely on her mother's UIM insurance or that Hodgkiss–Warrick made infrequent use of a particular household vehicle is thus beside the point. *Cf. Ball by and through Ball v. Midwestern Ins. Co.*, 829 P.2d at 903 ("Whether or not it [the household vehicle in which the claimant was injured] was used regularly is immaterial; it was available for regular use."). The reasonableness of the exclusion is not to be judged according to the insured's particular circumstances as they change from day to day. Were that the rule, then the exclusion might be reasonable one day and unreasonable the next or even reasonable and unreasonable at the same time with respect to different resident relatives, a prospect intolerable to the parties and the courts alike. The reasonableness of the exclusion, rather, must be assessed as a general matter, and as discussed above we are persuaded that, under that standard, the regular use exclusion at issue here passes statutory muster. If there is to be a different result, if UIM coverage is to be mandated for injuries suffered in or inflicted by a resident relative's vehicle, that mandate must come from the General Assembly.

### III. Under Pennsylvania Law, the Regular Use Exclusion in the UIM Insurance Contract Is Enforceable.

■ In granting summary judgment to State Farm, the trial court applied Pennsylvania law and determined that the regular-use exclusion in Hodgkiss–Warrick's policy is enforceable in Pennsylvania. Hodgkiss–Warrick did not challenge that construction of Pennsylvania law before the Court of Appeals and did so before this Court only to the extent of questioning the conclusiveness of the specific Pennsylvania Supreme Court case the trial court relied upon. Arguably, therefore, Hodgkiss–Warrick has waived the issue, but even if not, we are convinced that the trial court's application of Pennsylvania law was correct.

The trial court relied on *Burstein v. Prudential Property and Casualty Ins. Co.*, 570 Pa. 177, 809 A.2d 204 (2002), in which the Supreme Court of Pennsylvania upheld against a public policy challenge a "regular use" exclusion from UIM coverage similar to the exclusion in Hodgkiss–Warrick's policy. Since *Burstein*, Pennsylvania's high Court has reiterated on at least two occasions that Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 *et seq.*, at least as amended as of 2011, did not invalidate, with respect to the MVFRL's underinsurance provisions, " 'long-standing [insurance] policy exclusions (including regularly-used non-owned car, household, and territorial exclusions) rooted in ensuring the collection of reasonable premiums (with reasonableness being monitored by the Insurance Department).' " *Williams v. GEICO*, 613 Pa. 113, 32 A.3d 1195, 1208 (2011) (quoting from *Erie Insurance Exchange v. Baker*, 601 Pa. 355, 972 A.2d 507, 511 (2009) (plur.) (Saylor, J., concurring)).

Although the Pennsylvania case law, as does ours, presents a variety of factual scenarios, it includes cases, like this one, in which one household vehicle, the vehicle the insured occupied when *injured*, was excluded from UIM coverage under the policy insuring another household vehicle, and the exclusion was upheld. *See, e.g., Baker*, 972 A.2d at 507 (claimant, injured while riding his motorcycle, sought UIM benefits under a policy covering his three other vehicles); *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002) (son injured in his own car sought UIM benefits under the policy cov-

ering the vehicles of his parents, with whom he resided); *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006 (1998) (same except resident son injured while riding motorcycle). *See also Burstein*, 809 A.2d at 204, and *Williams*, 32 A.3d at 1195, (in both cases, claimant was injured while occupying a regularly used, non-owned vehicle and was denied UIM coverage under the policy covering the claimant's personal vehicle). Given the Pennsylvania Supreme Court's consistent holding that "regular use" or "household" exclusions from UIM coverage, such as the one in Hodgkiss–Warrick's policy, serve the legitimate purpose under Pennsylvania law of helping to contain insurance costs by keeping the insurance company from "paying on a risk it did not knowingly insure, or collect a premium to underwrite," *Baker*, 972 A.2d at 511, the trial court correctly determined that the exclusion in Hodgkiss–Warrick's policy is valid and enforceable under Pennsylvania law.

### CONCLUSION

In contract actions, the law of the state with the most significant contacts with the parties and the transaction is to be chosen absent an explicit, well-defined and dominant public policy that overrides that general choice of law rule. While our General Assembly, through the MVRA, has evinced an overriding public policy in the area of automobile liability coverage, a mandatory form of insurance, there is no comparable public policy regarding underinsured motorist coverage, an optional coverage which may be purchased on the "terms and conditions" agreed to by the parties. Pennsylvania law governs this contract dispute and the Court of Appeals erred when it declined, on perceived public policy grounds, to apply that state's law. The regular use provision applicable to Hodgkiss–Warrick's UIM coverage is enforceable and State Farm properly denied

UIM benefits to her. Accordingly, we reverse the Court of Appeals Opinion and reinstate the Judgment of the Rockcastle Circuit Court.

MINTON, C.J.; KELLER, and NOBLE, JJ.; concur. SCOTT, J., dissents by separate opinion in which Cunningham, J., joins. VENTERS, J., not sitting.

SCOTT, J., Dissenting.

I strongly dissent from the majority's opinion which, applying Pennsylvania law, does not allow Karen Hodgkiss–Warrick to recover from her underinsured motorist (UIM) policy.

Karen had resided with her adult daughter, Heather, for less than a year when she suffered debilitating injuries due to Heather's negligence which caused an accident in Kentucky in Heather's leased car. Karen's recovery from Heather's insurance company was $60,000 shy of the amount necessary for Karen's extensive medical bills. To close this deficit, Karen filed claims against her own insurance carrier, State Farm, on two UIM policies—one on her own vehicle and another on her estranged husband's. However, because Karen's UIM policy excluded vehicles owned by or leased to a resident relative, State Farm denied the claim on her policy. Furthermore, because Karen and her husband were separated at the time of the accident and not residing together, State Farm denied Karen's claim under her husband's UIM policy.

In short, Karen could not recover under her policy because of whom she *was* living with and could not recover under her husband's policy because of whom she *was not* living with. Had Heather moved in across the street or next door to Karen, or had the two not shared their duplex as a single

dwelling,[9] Karen would have been compensated; had Karen still been living with her husband, she would have been compensated; had Karen been riding in the vehicle belonging to either of the other two passengers, she would have been compensated. However, since Karen lived (for the time) with her adult daughter (over whose insurance policy limits she had no control), the majority holds today that she may not recover.

It seems to me the insurance contract makes an arbitrary distinction based *solely* on Karen and Heather's familial relationship and the fact that they lived in the same household at the time of the accident. It is certainly not based on the fact that Karen had the opportunity to ensure that her twenty-three-year-old daughter had higher limits on her liability policy. She clearly had no such control.

The exemption in Karen's policy excludes UIM coverage when the underinsured vehicle is "owned by, rented to, or furnished or available for the regular use of you or any resident relative." The "regular use" part of the exemption has no bearing on this case. Karen did not regularly use her daughter's car, nor was it available for her regular use. She had her own car. In fact, the day of the accident marked only the second time Karen had ever ridden in Heather's car. Yet, she was denied coverage because she was living with her daughter at the time of the accident, making her a "resident relative." If Karen and Heather had not been related, but had been living together, the terms of Karen's UIM policy would have allowed recovery.

Thus, I see the real issue' in this case as whether a family or household exclusion is permissible in Kathy's UIM policy under the facts of this case. Plainly, such an exclusion *would not be allowed* in a liability policy. *Lewis by Lewis v. W. Am. Ins. Co.*, 927 S.W.2d 829 (Ky.1996) ("Such exclusions limit the insurance coverage available for a person's injuries solely on the basis of the injured party's status as a member of the policyholder's family. We find that such an exclusion to insurance coverage is deleterious to our community interests and is repugnant to the public policy of our Commonwealth."). While the courts of our Commonwealth have upheld regular use exemptions in UIM policies, the facts of those cases are quite different from those of the case at bar. In fact, the "justification for the regular-use exclusion is ... the fact that the insured or another family member [ (typically a parent who owns the car in which his or her minor child is injured or one spouse attempting to collect from a UIM policy on the other spouse's vehicle) ] has control over how much liability is purchased." *Murphy v. Kentucky Farm Bureau Mut. Ins. Co.*, 116 S.W.3d 500, 503 (Ky.App.2002). This case simply does not fit that mold.

While the parties to this action do have the most significant contacts with Pennsylvania, and therefore, under our conflicts of laws analysis, Pennsylvania law would be applicable, "Kentucky courts have traditionally refused to apply the law of another state if that state's law violates a public policy as declared by the Kentucky legislature or courts." *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 35 (Ky.2004). If the family or household exclusion in Kathy's policy is enforceable under the facts of this case, it is clearly contrary to our Commonwealth's public policy, as this Court held in *Marley, id.* at 36: "[i]t is clear that the public policy of Kentucky is to ensure that victims of mo-

9. The duplex had separate living quarters on each side, including a bedroom and living room. However, the kitchen and dining area was shared between the two.

tor vehicle accidents on Kentucky highways are fully compensated." For that public policy reason and those that follow below, I would affirm the Court of Appeals, apply Kentucky law, and allow Kathy to recover under her UIM policy.

I believe Kentucky's public policy is violated in this instance, as the exclusion in the current case is like that in *Marley, id.* One of the issues raised in *Marley* was whether a family exclusion in an umbrella policy was valid and enforceable in Kentucky. This Court was tasked with determining whether the umbrella policy was, in fact, an automobile policy under the MVRA. We held: "[t]he insurance policy in this case covers automobile accidents. The mere fact that the policy is labeled as an umbrella policy and written separately from the underlying automobile policy, or that it covers claims other than automobile accidents, does not validate an exclusion provision of this nature." *Id.* at 35–36. Like the UIM coverage in the case at bar, the umbrella policy in *Marley* was over-and-above the minimum liability coverage required by the MVRA and was entirely optional. Certainly, if the family exclusion was unenforceable in this *extra, optional* policy, it is unenforceable as to Karen's UIM policy under the facts of her case.

The majority cites several cases which are readily distinguishable from the case at bar. For example, in *Preferred Risk Mut. Ins. Co. v. Oliver,* 551 S.W.2d 574 (Ky.1977), this Court held that motorcycles could be excluded from uninsured motorist coverage. However, the exclusion of an entire class of vehicles from coverage is readily distinguishable from the exclusion of members of one's family who happen to reside together at the time of an accident. No one injured on a motorcycle would have been covered under the policy. The driver's familial relationship to the insureds was immaterial.

The majority also argues that, in *Motorists Mut. Ins. Co. v. Glass,* 996 S.W.2d 437, 449 (Ky.1997), this Court upheld a "regular use" exclusion almost identical to that in Karen's policy. While the exclusions in the two policies are similar, the Court's reasoning for upholding it in *Glass* is entirely inapplicable to the facts of the case at bar. In that case, we quoted a Court of Appeals' decision noting, " '[t]he purpose of UIM coverage is not to compensate the insured or his additional insureds from his own failure to purchase sufficient liability insurance.' " *Glass,* 996 S.W.2d at 450 (Ky. 1997) *(quoting Windham v. Cunningham,* 902 S.W.2d 838, 841 (Ky.App.1995)). However, in the case at bar, Karen did not fail to purchase sufficient liability insurance in her own policy. Her problem here was that she had no control over the insurance coverage her adult daughter, Heather, purchased on her leased vehicle. The only insurance policy Karen had control over was her own. With that control, she purchased UIM coverage to protect her in the event she was in an accident involving an underinsured vehicle.

The majority also relies on *Burton v. Kentucky Farm Bureau Mut. Ins. Co.,* 326 S.W.3d 474 (Ky.App.2010) in support of its position. However, Burton is also easily distinguishable, as it involved a wife attempting to recover from her UIM policy after she was injured in a vehicle operated by her husband. The vehicle was registered to both the husband and wife. Clearly, since she was an owner of the vehicle, the person seeking to recover from the UIM policy had control over the amount of liability insurance purchased. Again, I reiterate that the "justification for the regular-use exclusion is ... the fact that the insured or another family member [ (typically a parent who owns the car in which his or her minor child is injured or one spouse attempting to collect from a

UIM policy on the other spouse's vehicle) ] has control over how much liability is purchased." *Murphy*, 116 S.W.3d at 503.

Further, in *Edwards v. Carlisle*, 179 S.W.3d 257 (Ky.Ct.App.2004), Edwards was denied UIM benefits because *she* regularly used the vehicle she was driving when she was involved in an accident. Edwards' denial of coverage did not result from the fact that another family member which whom she resided regularly used the vehicle. Rather, it was her *own* regular use which barred her.

Finally, in *Murphy*, 116 S.W.3d 500, the estate of a child killed in a car accident attempted to recover UIM benefits from the policies of other household members (belonging to the child's sister and stepfather). In that case, the mother of the deceased child had the opportunity to secure adequate liability insurance on the vehicle in question, which she owned.

Absent from any of the cases relied upon by the majority is a factual situation such as that in the present case. Kathy, the party seeking relief, had no control over the limits of Heather's liability policy. Heather's car was not available for her mother's regular use. In fact, the day of the accident was only the second time Kathy had ridden in her daughter's car. This is not a case in which the loss resulted from Kathy's "failure to purchase sufficient liability insurance." *Glass*, 996 S.W.2d at 450. She did all she could within reason to ensure that she would be adequately insured in the event of an accident. However, under the majority's opinion, she will be left owing even her medical expenses.

In closing, I would like to reiterate the inequities caused by the family or household exclusion this Court recognized in *Lewis*:

> First, every day in our Commonwealth parents participate in car pools and drive their children and their neighbor's children to school, social, and recreational events. However, if the parents' negligence results in an automobile collision equally and seriously injuring all passengers, only the neighbor's children can be fully compensated. The policy holders' children, despite the severity of their injuries are limited to the minimum mandated insurance coverage.
>
> Second, when two married couples drive to dinner in the driver's car and all are injured by the driver's negligence, the driver's friends are protected by the full amount of insurance coverage but not the driver's spouse. If one of the friends operates the automobile, the friend's spouse is provided full insurance protection, but not the owner or owner's spouse.
>
> Third, it is commonplace for two neighborhood families to drive to a common destination with the children from both families intermingled in both cars. Unfortunately, if the cars negligently collide, only those children who happen to be riding with their neighbor can be fully compensated.

927 S.W.2d at 833. This is just the sort of inequity we have in this case.

It is for these reasons that I dissent and would affirm the Court of Appeals under this factual scenario.

CUNNINGHAM, J., joins.