WRIGHT, J., DISSENTING:
While I fully agree with Justice Keller's astute separate opinion, I write separately to further lay out my opinion on the matter. It is the distinguished role of this Court throughout the ages to be a stabilizing force, standing apart from the political headwinds which sweep through the legislative process. Legislation from our General Assembly is political in the making. Our decisions are non-political and are based on the guiding hand of our state constitution. If this Court is not vigilant in protecting equally the weak and the strong, the poor and the rich, the accused and the victims, then some individuals and some rights may be trampled underfoot. Social and economic issues are matters of legislative concern rather than this Court's-so long as basic constitutional mandates are satisfied. Yet, such mandates were not satisfied here.
It is the position of this dissent that the legislation in question fails because it does not meet the requirements and proscriptions of our state constitution. More particularly, the legislation violates Section 59 of our state constitution.
Section 59 of the Kentucky Constitution provides greater protections than those of our sister states, as Justice Keller lays out. Section 59 of the Kentucky Constitution *620 reads: "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: ... [t]o regulate labor, trade, mining or manufacturing." Because of this unique constitutional directive, we cannot blindly follow the rulings of our sister courts from around the nation on this matter-unless we follow the lead of Oklahoma and do so through a constitutional amendment. As Justice Keller notes, when Oklahoma (the only other state with similar protections) enacted its so-called "Right to Work" law, it did so through an amendment to its state constitution.
We have held the purpose of Section 59 is to "prevent special privileges, favoritism, and discrimination, and to [e]nsure equality under the law." Ky. Harlan Coal Co. v. Holmes , 872 S.W.2d 446, 452 (Ky. 1994). Section 59 prevents the enactment of laws that do not "operate alike on all individuals and corporations." Jefferson Cnty. Police Merit Bd. v. Bilyeu , 634 S.W.2d 414, 416 (Ky.1982) (citing City of Louisville v. Kuntz , 104 Ky. 584, 47 S.W. 592, 592-93 (1898) ). I point out that, "in order for a law to be general in its constitutional sense it must meet the following requirements: (1) it must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification." Kentucky Harlan Coal Co. , 872 S.W.2d at 452.
Thus, to determine whether the statute is special legislation we must first determine what the class consists of and whether the statute treats all class members equally. KRS 336.132 specifically states that "[a]ny agreement, understanding, or practice, written or oral, implied or express, between any labor organization and employer which violates an employee's rights as set forth in subsection (3) of Section 1 of this Act shall be unlawful and void, ...." An agreement or understanding is a contract and the statute restricts what an agreement or understanding can require. Therefore, it is clear that the statute places restrictions on the freedom of contract. As this Court has acknowledged, the Commonwealth has "very substantial policies in favor of the freedom of contract." State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick , 413 S.W.3d 875, 880 (Ky. 2013). This right to freedom of contract is equally important to those of all political and socioeconomic backgrounds-from business owners to unions and from white collar workers to blue.
After looking at the class, the next question we must examine is whether the legislation places the restriction equally on all contracts. KRS 336.130(3) specifies that "no employee shall be required, as a condition of employment or continuation of employment, to ... [p]ay any dues, fees, assessments, or similar charges of any kind or amount to a labor organization ...." The restriction on payments is explicitly limited to labor organizations as a condition of employment or continuation of employment. Thus, the statute clearly fails to "operate alike on all individuals and corporations." Bilyeu , 634 S.W.2d at 416.
Webster's Dictionary defines employ as "1. To put to service or use. 2. To apply or devote (e.g., time) to an activity. 3. a. To put to work. b. To provide with gainful work." Webster's II New Riverside University Dictionary 429 (1994). This definition would cover people working under a contract negotiated by a union and those who are not. The problem with the statute arises because it does not cover all members of the class. It would cover union contracts-but not other contracts between employees and employers.
Unions negotiate business agreements-often incurring large costs in the process. Unions must invest in a strike fund in case *621 contract negotiations necessitate a strike, spend countless man hours, and expend various other resources in negotiating the contract. All employees get the benefits of the contract in terms of wages and benefits whether they are union members or nonunion workers. Under prior law, nonunion workers under the contract would have to cover their proportional share of the union's cost of negotiating and enforcing the contract. Even under this prior law, the nonunion workers were exempt from paying any part of union costs for any activity beyond the cost of the contract under which they are working. For example, they were not required to contribute to any political activity of the union. The legislation that has been designated as "Right to Work" gives these employees the benefit of working under a contract that was negotiated at considerable cost, yet prohibits the contract from requiring that the nonunion worker pay any share of the cost of the contract. No other contracts are treated in this manner under our laws.
I will offer a couple examples to better illustrate my point. Assume a company called Work Development, Inc., negotiated a contract to supply vehicle parts to Toyota. Work Development, Inc., incurred the expense of negotiating the terms and conditions of the work they would perform on behalf of Toyota as well as the expenses incident to developing the specifications for the part. The contract negotiated by Work Development, Inc., would be an employment contract since it amounts to an agreement to do gainful work for someone else. The question then arises: would the statute prohibit Work Development, Inc., from negotiating a contract that would make it the sole provider for the part? It would not. Would the statute require Work Development, Inc., to share the negotiated terms of the contract and force it to share the proprietary information on the productions specifications with any competitor who wished to supply the same part to Toyota? No. Would the statute prohibit Work Development, Inc from negotiating compensation for its work in developing the contract or requiring any competitor to pay a proportional share of the cost of developing the specification of the component part if a competitor were to make and supply some parts under said contract? No.
While this statute would not prohibit Work Development, Inc. from negotiating such a contract, the statute prohibits just such conduct by labor unions. Therefore, Work Development, Inc., would be treated differently under the statute than a union-even though both the union and Work Development, Inc., negotiated contracts to do work for someone else. Therefore, this statute fits the very definition of special legislation-as it treats one member of the class (a company negotiating a contract for employment) differently than another (a union negotiating the same type of contract).
Let us look to a different example. Suppose a landowner wishes to have a boundary of coal mined. With that goal in mind, the property owner negotiates a contract with a company called Coal Works, Inc., to mine the coal. Coal Works would have to do the work of developing and applying for a mining permit. Upon receiving the permit, Coal Works would be tasked with building roads across the property to the location of the coal boundary. Does the statute prohibit Coal Works from negotiating contracts stating they have the exclusive right to mine the coal? No. If another company mines part of the coal, would the statute prohibit the contract from providing that a proportional share of the cost of developing the permit and building the roads being paid to Coal Works? Certainly not. However, the statute prohibits a union from being compensated for the work it *622 does in negotiating a contract. This statute would not have the same effect on Coal Works' contract to do the work of mining the coal for someone else as it would on a union's contract to perform work.
Here, the statute treats business contracts negotiated by a union to perform work for someone differently than it treats contracts negotiated by companies to perform work for someone. Therefore, the statute constitutes special legislation in violation of Section 59 of the Kentucky Constitution.
Cunningham and Keller, JJ., join.