RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0886-MR

LORIANE POWELL          APPELLANT

          APPEAL FROM MARSHALL CIRCUIT COURT
v.          HONORABLE ANDREA L. MOORE, JUDGE
          ACTION NO. 22-CI-00302

MICHAEL POWELL AND
GEICO INDEMNITY COMPANY          APPELLEES

AND

NO. 2024-CA-1385-MR

MICHAEL POWELL          CROSS-APPELLANT

         CROSS-APPEAL FROM MARSHALL CIRCUIT COURT
v.          HONORABLE ANDREA L. MOORE, JUDGE
          ACTION NO. 22-CI-00302

LORIANE POWELL AND
GEICO INDEMNITY COMPANY          CROSS-APPELLEES

AND

NO. 2024-CA-1413-MR

GEICO INDEMNITY COMPANY                                    CROSS-APPELLANT


                CROSS-APPEAL FROM MARSHALL CIRCUIT COURT
v.               HONORABLE ANDREA L. MOORE, JUDGE
                     ACTION NO. 22-CI-00302


LORIANE POWELL AND
MICHAEL POWELL                                            CROSS-APPELLEES


                                OPINION
                 REVERSING AND DISMISSING IN PART, AND
                           AFFIRMING IN PART

                            ** ** ** ** **

BEFORE:  CETRULO, KAREM, AND MOYNAHAN, JUDGES.

CETRULO, JUDGE:  Loriane Powell ("Loriane") appeals from the Marshall

Circuit Court judgments dismissing her claims against Michael Powell ("Michael")

as settled, and granting summary judgment in favor of Geico Indemnity Company

("Geico") on her claims of bad faith.  Geico and Michael filed cross-appeals from

the subsequent circuit court ruling permitting Loriane to pursue appeal of the

judgment as to Michael despite the late filing of the notice of appeal.  Finding no

evidence of excusable neglect, we grant the relief requested by the cross-appeals,

rendering it unnecessary and inappropriate for us to address the merits of the

circuit court's earlier ruling as to Michael. We affirm the summary judgment in favor of Geico.

## PROCEDURAL BACKGROUND

The procedural and factual history of this case is rather convoluted. Loriane and Michael, both Tennessee residents, are husband and wife who were involved in a motorcycle accident in Kentucky in June 2022. Michael was operating the motorcycle, and Loriane was riding on the back when she sustained injuries.

Within weeks of the accident, Loriane contacted Geico, their Tennessee insurance carrier on the motorcycle, and agreed to accept a settlement offer of the policy limits of $25,000. This oral agreement was recorded, and Geico followed up with a written release agreement which Loriane signed. However, the check was sent to Air Evac EMS ("Air Evac"), a medical provider that had contacted Geico, Loriane, and Michael, indicating it had a lien of $79,470.50. In that earlier phone conversation, Loriane had acknowledged and agreed that Geico should send this payment directly to Air Evac.

A few weeks later, Loriane, now represented, sued Michael and Geico, asserting that Geico had erroneously paid the settlement to Air Evac and therefore breached the settlement agreement. The complaint further included an uninsured motorists ("UM") claim against Geico. The complaint alleged that an

unknown motorist had spilled or allowed bales of hay to come loose upon the roadway, contributing to Michael losing control of the motorcycle. Finally, the complaint included claims against Geico for violation of Kentucky's Unfair Claims Settlement Practices Act. These bad faith claims were promptly bifurcated by agreed order.

In answering the suit, both Michael and Geico raised as an affirmative defense that the claims against Michael should be dismissed as settled. Geico further asserted that, in the recorded phone conversation, Loriane had specifically authorized Geico to send the settlement draft to Air Evac. Michael promptly moved for judgment on the pleadings, asserting accord and satisfaction; release and settlement of the claims; and in support of his motion, attached the transcript of the phone conversation. Loriane, for her response, argued that the court should not even consider the oral agreement of the parties because parol evidence cannot be considered to contradict the written agreement.

The record reflects that Geico and Loriane both ultimately determined that Air Evac did **not** in fact have an enforceable lien, and Geico promptly sent a second $25,000 check to counsel for Loriane. The record further indicates that the parties then agreed in August 2023 to release and dismiss the claims against Geico for UM benefits, upon its additional payment of policy limits of $25,000 in UM coverage. The agreed order stated that only the remaining bad faith claims against

-4-

Geico and the claims against Michael would proceed. On October 3, 2023, the circuit court then entered an order dismissing the claim against Michael. The circuit court found that the recorded conversation did not *contradict* the contract and thus could be considered. In fact, the court found it showed that Loriane settled the claim and agreed the check could go directly to Air Evac. Loriane appealed that ruling to this Court.

In November 2023, this Court issued a show cause order, noting that the October 2023 order did not resolve the remaining claims against Geico pending in the Marshall Circuit Court, and the order did not contain finality language of Kentucky Rule of Civil Procedure ("CR") 54.02.[1] Loriane failed to respond to the show cause order, and on January 29, 2024, this Court dismissed the appeal. *Powell v. Powell*, No. 2023-CA-1326-MR (Ky. App. Jan. 29, 2024). In that order, we noted that the parties had engaged in continuing litigation in the circuit court regarding the claims against Geico. Specifically, Geico had moved the circuit court for summary judgment in its favor, arguing that Geico could not be held liable for bad faith handling of Loriane's bodily injury claim because she was not entitled to liability or UM coverage under the Tennessee policy and Tennessee law.

---

[1] A trial court's failure to include both the recitations that the judgment is final and that there is no just reason for delay renders it interlocutory and non-appealable. *Vorherr v. Coldiron*, 525 S.W.3d 532, 540 (Ky. App. 2017).

When the matter returned to the circuit court, Geico moved for a status conference resulting in a discussion at motion docket at which all counsel were present. At that time, the court indicated that it was "going to get an order out within the week" and noted such on the docket sheet for the hearing. Within days, the court did issue an amended order again dismissing the claims against Michael by simply adding the words, "this is a final and appealable order and no just cause for delay" to the previous dismissal order. That order was entered on June 5, 2024. On June 10, the circuit court granted summary judgment in favor of Geico on the remaining claims of bad faith.

Loriane timely filed a notice of appeal on July 9 from the judgment in favor of Geico. On July 10, an amended notice of appeal was filed, now adding that the notice of appeal was also from the June 5 ruling.

Counsel for Loriane then filed a motion before the circuit court requesting an enlargement of time for filing the notice of appeal, asserting excusable neglect under Kentucky Rule of Appellate Procedure ("RAP") 3. In his written motion for enlargement of time, he asserted without affidavit that he had computer network problems on June 5 and that he then traveled to Louisville for a continuing legal education conference shortly after the June 5 order was entered. The motion further stated that counsel did not return to the office until the following week, at which time he received and calendared the June 10 order

granting summary judgment to Geico. At a hearing, counsel for Loriane candidly stated, "I missed it," referring to the June 5 order, and he was "not entirely sure why." After the hearing, the circuit court granted the motion allowing the appeal to proceed.

On appeal, Loriane argues, as to dismissal of Michael, that the circuit court erred in considering the recorded conversation as parol evidence, which she claims contradicts the written settlement/release. She also argues that the court erred in granting summary judgment in favor of Geico and asserts that the court's reliance upon *State Farm Mutual v. Hodgkiss-Warrick*, 413 S.W.3d 875 (Ky. 2013), and Kentucky Revised Statute ("KRS") 304.39-090 was in error.

For their cross-appeals, No. 2024-CA-1385-MR and No. 2024-CA-1413-MR, Geico and Michael both argue that the circuit court erred in enlarging the time for Loriane to file her notice of appeal as there was not a sufficient showing of excusable neglect.

## JURISDICTION

Our Supreme Court has recently stated: "Our review of a defect in a notice of appeal regarding its timely filing is essentially *de novo*." *Cabinet for Health & Fam. Servs. v. D.W.*, 680 S.W.3d 856, 860 (Ky. 2023). Furthermore, "[w]ithout the properly filed notice of appeal, the appellate court lacks jurisdiction to consider the matter." *Cabinet for Health & Fam. Servs. v. H.C.*, 581 S.W.3d

-7-

580, 583 (Ky. 2020). There is no substantial compliance rule with regard to timely filing of a notice of appeal, and the mandatory application of the Rule applies "even when the appealing party makes a good faith effort to file the notice of appeal." *D.W.*, 680 S.W.3d at 860. Our civil procedure rules make it clear that "[t]he timely filing of a notice of appeal is jurisdictional." RAP 2(A)(2). The only means for a party to be granted the late filing of an appeal in a civil case such as this is pursuant to RAP 3(D) which provides:

> Upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment or an order which affects the running of the time for taking an appeal, the trial court may extend the time for appeal, not exceeding 10 days from the expiration of the original time.

However, RAP 3(C) also specifically provides that failure of a party to receive notice of the judgment or order does not affect the time to appeal except as permitted above. Thus, it is clear from these appellate rules that there must be a showing of excusable neglect; even then, the circuit court has only limited discretion to extend the time not to exceed a period of 10 days. Here, in its discretion, the circuit court granted that request, but we must determine whether Loriane made a sufficient showing of "excusable neglect" to support that ruling and give us jurisdiction.

While many of our rules and statutes speak in terms of excusable neglect, they do not actually define the phrase. We must turn to the many

examples of what constitutes excusable neglect found within our case law. In *AK Steel Corporation v. Carico*, the Supreme Court stated that "a misunderstanding over the filing date is not the type of excusable neglect that would enlarge the time for filing the jurisdictional document after that time expired." 122 S.W.3d 585, 586 (Ky. 2003). There, the attorney had confused the filing deadline with a deadline in another case involving the same issue and party. *Id.*

In *Cabinet for Health & Family Services v. H.C.*, *supra*, our Supreme Court held that counsel's misreading of the date of notation of service of the judgment was not the type of excusable neglect that could extend the period for filing a notice of appeal. 581 S.W.3d at 583. In that case, counsel had attempted to file a notice within the 30-day period, but it was deemed ineffectual due to her failure to include a motion to proceed *in forma pauperis*. *Id.* at 582. When she refiled, it was four days past the 30-day window. *Id.* As here, counsel promptly sought permission from the circuit court to proceed under RAP 3(D).[2] *Id.* In that case, the trial court found that counsel's confusion over the filing date constituted excusable neglect, and allowed the late filing. *Id.* However, our Supreme Court reversed, holding that misreading of the entry date is not the type of excusable neglect contemplated by our appellate rules. *Id.* at 583-84. As the Court

---

[2] We cite to the RAP, even though it was actually under the prior analogous CR 73.02, which contained identical language.

-9-

elaborated, counsel could have called the clerk's office or performed an online review of the case well before the expiration of the 30-day period. *Id.* at 584.

In *D.W.*, *supra*, the Supreme Court found no excusable neglect when counsel was allegedly blocked from e-filing the notice of appeal in a termination of parental rights case, due to the sealing of the file by the clerk. 680 S.W.3d at 862. The attorney then filed the notice in a related dependency, neglect, and abuse case, noting that the termination case was sealed. *Id.* at 859. This Court permitted the appeal to proceed, and the Supreme Court reversed, holding that the rules are mandatory and that we had no jurisdiction to proceed with the appeal. *Id.* at 863.

Based on this precedent, we find that the failure to timely file the appeal is not the type of excusable neglect to grant us jurisdiction to consider this appeal. In this case, counsel for all parties attended a conference before the circuit court on May 28, 2024. The sole purpose of the status conference was to determine what remained to be done considering this Court's prior dismissal of the first appeal. The circuit court noted that it had neglected to include the finality language to the previous ruling and it had been remanded because it "left out some necessary language."

The parties, including counsel for Loriane, advised the court that there were also claims against Geico which needed to be ruled upon as Geico had moved for summary judgment in the interim. Counsel for Loriane specifically stated that

-10-

he wanted to be able to appeal both rulings together. The court then announced (and noted it on the docket sheet) that it would "get an order out on this by the end of the week" which did occur.

The order as to Michael's dismissal was amended solely to add the language that there was no just reason for delay. It was entered on June 5. The order granting summary judgment in favor of Geico was entered five days later. Loriane timely appealed from that second judgment and then attempted to file an amended notice, five days too late, from the first order. On July 15, counsel moved the court for more time, stating only that his office had experienced significant network computer issues on June 5 which required the assistance of outside consultants. Counsel's motion also stated that he went to Louisville for a continuing legal education program, but again provided no details as to why attending a conference within the state constituted excusable neglect. He stated that he returned to the office the following week and received the order as to Geico which he noted on his calendar. There was no affidavit as to how long those computer problems lasted, nor any indication that he did not ever actually receive the court's first order via e-filing. Indeed, as he candidly stated at the hearing on the motion, it appears that he "just missed it."

While we appreciate the candor of counsel, even being in another trial or out of the country for weeks, based upon our precedent, simply does not

constitute excusable neglect. *See, e.g.*, *Smith v. Lightstorm Props., LLC*, No. 2023-CA-1274-MR, 2024 WL 4575680 (Ky. App. Oct. 25, 2024) (unpublished opinion);[3] *see also Motors Ins. Corp. v. Fields*, 294 S.W.2d 518 (Ky. 1956). Again, our appellate rules make it clear that even the failure of a party to actually receive the judgment does not affect the time to appeal. *See Estate of Reeder v. Ashland Police Dep't*, 588 S.W.3d 160, 168 (Ky. App. 2019).

On appeal, counsel argues that the other parties were "on notice" of his intent to appeal because he had attempted to appeal the ruling once before, and, at the status conference, he made it clear that he would be appealing again. However, the test is not whether allowing the appeal would cause any prejudice to the other party. It is simply what constitutes excusable neglect so as to give jurisdiction to this Court. If the other parties were "on notice," then Loriane was also on notice that the court would not be long in simply amending the prior order, and the parties should have been expecting that ruling. Certainly when he received the judgment in Geico's favor on June 10, counsel should have investigated whether the other order had also been entered as promised by the trial court.

Litigants have an obligation to keep a check on the progress of their cases. *Estate of Reeder*, 588 S.W.3d at 168 (citation omitted). In *Fields*, the Court held that the fact counsel was engaged in other litigation that consumed all of his

---

[3] Pursuant to RAP 41, we cite this case merely as persuasive, not binding.

time was not excusable neglect within the purview of the rules allowing additional time to appeal. 294 S.W.2d 518. Similarly, illness or injury of counsel is not sufficient to constitute excusable neglect. *Wright-Starnes v. Cont'l Realty Advisors, Ltd.*, No. 2014-CA-002066-MR, 2016 WL 2638152 (Ky. App. May 6, 2016) (unpublished opinion).[4] We are not unsympathetic to Loriane's plight in being denied this appeal, particularly in light of the previous dismissal for lack of finality. However, we cannot agree that this situation constitutes excusable neglect, or every appellant who has missed the deadline for timely filing could assert excusable neglect. *See D.W.*, 680 S.W.3d at 862-63. To allow that in this case would mean that timely filing is no longer the rule.

While this principle may seem harsh, our recent Supreme Court cases make it clear that the timely filing of a notice of appeal is mandatory and jurisdictional subject only to well-defined exceptions. *Bruenger v. Miller*, 706 S.W.3d 247, 261 (Ky. 2024); *H.C.*, 581 S.W.3d at 584. For all the foregoing reasons, we rule in favor of the cross-appellants and vacate the trial court ruling which allowed the late filing of the appeal as to Michael. Having no jurisdiction to consider it, we dismiss the appeal from the June 5 ruling in favor of Michael.

---

[4] Pursuant to RAP 41, we cite this case merely as persuasive, not binding.

-13-

## SUMMARY JUDGMENT

The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Id.* Thus, a summary judgment looks only to questions of law, and we review *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016).

As to the appeal by Loriane of the judgment in favor of Geico, the notice of appeal from that ruling was timely. Loriane asserted that Geico committed bad faith in its handling of the claims of Loriane against Michael and in its handling of her claims for UM coverage. The circuit court disagreed and granted summary judgment to Geico.

In its ruling, the court made note of the defenses by Geico that Loriane was not entitled to bodily injury liability coverage under the Geico policy due to the "household exclusion." There is no dispute that it was a Tennessee

-14-

policy and Tennessee law permits application of the household exclusion. That policy specifically stated that it did not provide liability coverage for any bodily injury suffered by a "covered person," and a covered person is defined as "you and any family member while using your covered cycle." Loriane was both a named insured, a covered person, and a spouse residing in the same household with Michael.

While Kentucky does not generally enforce household exclusions, Tennessee does. *See Purkey v. Am. Home Assur. Co.*, 173 S.W.3d 703, 704 (Tenn. 2005) (citing *Dockins v. Balboa Ins. Co.*, 764 S.W.2d 529, 530 (Tenn. 1989), and *Holt v. State Farm Mut. Auto. Ins. Co.*, 486 S.W.2d 734, 735 (Tenn. 1972)) ("This Court has twice held that household and family exclusion clauses in automobile insurance contracts are valid and enforceable."). Geico moved for summary judgment on this basis, asserting further that Tennessee law applied to this issue.

In response, Loriane argued that Kentucky's Motor Vehicle Reparations Act ("MVRA") requires all operators to have minimum liability coverage while in this Commonwealth, and the fact that the accident occurred in Kentucky requires Geico to provide that coverage despite the policy language. While the circuit court ruled in Geico's favor, its order did not address the merits of this legal issue, but simply noted that "regardless of its arguments" as to

coverage, Geico had in fact paid the $25,000 policy limit within 30 days of the accident.[5]

On appeal, this Court may affirm a circuit court order for any reason sustainable in the record. *Stephens v. Denison*, 150 S.W.3d. 80, 82 n.1 (Ky. App. 2004). Here, it is clear from the record that the bad faith handling of the bodily injury claim against Geico was properly dismissed as a matter of law.

In *Hodgkiss-Warrick*, our Supreme Court addressed a very similar claim by an out-of-state resident who sustained injuries from an accident in Kentucky. 413 S.W.3d at 881. The Pennsylvania policy in that case similarly limited the recovery of a household member. *Id.* The injured party argued that Kentucky's public policy against such exclusions and our policy mandating minimum liability coverage required provision of coverage for the injuries sustained in Kentucky. *Id.* Our Supreme Court disagreed and emphasized that our choice of law provisions require application of the other state's law and policy when the only connection is that the accident occurred within our borders.

> In contract actions, the law of the state with the most significant contacts with the parties and the transaction is to be chosen absent an explicit, well-defined and dominant public policy that overrides that general choice of law rule. While our General Assembly, through the MVRA, has evinced an overriding public policy in the area of automobile liability coverage, a mandatory form of

---

[5] According to its brief, Geico actually made two payments of $25,000 – one to both Loriane and her counsel, and one to Air Evac.

insurance, there is no comparable public policy regarding underinsured motorist coverage, an optional coverage which may be purchased on the "terms and conditions" agreed to by the parties. Pennsylvania law governs this contract dispute and the Court of Appeals erred when it declined, on perceived public policy grounds, to apply that state's law.

*Id.* at 887.

Loriane argues that *Hodgkiss-Warrick* is distinguishable because it addressed UM benefits – which are not required coverage in Kentucky – and that this claim concerns basic reparations benefits coverage or "security" that all owners of motor vehicles operated in Kentucky are required to provide. It is true that if an injured party is an insured from another state and has a foreign insurance policy, and is involved in an accident in Kentucky, then KRS 304.39-100 requires that the insured's foreign policy must provide the minimum security on a motor vehicle for tort liability. *Dairyland Ins. Co. v. Assigned Claims Plan*, 666 S.W.2d 746, 748 (Ky. 1984). However, here, Loriane's reliance on KRS 304.39-100 is misplaced. That statute specifically exempts "motorcycles" from the security that owners are mandated to maintain, as follows:

in any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle *other than motorcycles* while the vehicle is in this Commonwealth shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities required by this subtitle[.]

(Emphasis added.)

-17-

In short, out-of-state insurers are not required to provide basic reparation benefits or minimum security for tort liability for out-of-state motorcycles when the out-of-state policy provides an enforceable exclusion.

We have long recognized that lesser protections for coverage to motorcyclists in Kentucky are justifiable. Consider the following passage from our Supreme Court in *Preferred Risk Mutual Insurance Company v. Oliver*:

> It is common knowledge that motorcycle riders, as a class, are among the highest risk groups conceivable. Motorcycles offer no protection whatsoever from the front, back, sides or top, and leave the rider exposed to every peril of highway travel. The exclusion of such a class from coverage is clearly reasonable where, as here, the assured has the option of avoiding the excluded peril. An assured has no choice in selecting those uninsured motorists who may injure him, but he certainly does elect to ride a motorcycle. This volitional act triggers the exclusion and he accepts the consequences.

551 S.W.2d 574, 577 (Ky. 1977); *see also Baxter v. Safeco Ins. Co. of Am.*, 46 S.W.3d 577, 579 (Ky. App. 2001).

In light of the exclusion of motorcycles from the purview of KRS 304.39-100(2) and consistent with *Hodgkiss-Warrick*, we find no strong public policy that would require us to apply Kentucky law to afford coverage here to a Tennessee resident whose policy explicitly denied it. Tennessee law and the policy itself precluded coverage for Loriane against Michael. Thus, we affirm the circuit court's ruling in favor of Geico on the handling of the bodily injury claim.

Turning to the claim of bad faith handling of the UM claim, we note that the circuit court once again did not rule directly on the law discussed by the parties, but simply noted that Geico had paid Loriane the UM limits of $25,000 within 20 days of an independent eyewitness being identified. As to whether the handling of the UM claim was done in bad faith, we again affirm, although on different grounds.

Geico's policy provided that "if there was no physical contact with a hit and run motor vehicle, the facts of the accident must be established by clear and convincing evidence, other than evidence provided by an occupant of the covered cycle." Here, Loriane never claimed that an uninsured motorist struck her or Michael's motorcycle, but alleged that an unknown motorist dropped bales of hay onto the roadway which ultimately caused her husband to lose control of his motorcycle.[6] For 11 months after the accident, Loriane did not reference any third party witness to the accident; however, on May 11, 2023, she did so with an affidavit from another driver stating that he did see a vehicle drop bales of hay onto the highway on the day of the accident. Geico tendered its $25,000 uninsured motorist policy limits on May 31, 2023.

---

[6] Under Kentucky law, it is unlikely Loriane would have been entitled to UM coverage in the absence of physical contact. *See Burton v. Farm Bureau Ins. Co.*, 116 S.W.3d 475 (Ky. 2003). However, here, the parties agree that Tennessee law applied to this claim for UM benefits.

The circuit court found no bad faith on the part of Geico in light of these facts. Loriane provides no dispute of these facts and did not produce any evidence of intentional misconduct or reckless disregard of her rights to warrant this matter proceeding to a jury. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citation omitted). An insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or facts. *Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 535 (Ky. 2022) (citation omitted).

While it is actually debatable whether this claim could even be pursued under Tennessee law, the circuit court did not address that issue, but simply granted summary judgment in favor of Geico because it paid the UM claim within 20 days of receipt of the witness affidavit. We find no error in that decision based upon our own case law interpreting the Unfair Claims Settlement Practices Act which was alleged herein. Neither does Loriane provide us with any Tennessee authority that would support this matter proceeding against Geico for its handling of the UM claim. Loriane, citing to *Gatlin v. Tennessee Farmers Mutual Insurance Company*, merely states an insurer has the duty to deal with its insured fairly and in good faith. 741 S.W.2d 324 (Tenn. 1987). (That is exactly what the circuit court found Geico had done by promptly paying the claim upon receipt of the affidavit.)

*Wittmer* states three elements are required to prevail on a bad faith claim:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

864 S.W.2d at 890.

Geico moved for summary judgment asserting that it was not obligated to pay the claim under the terms of the policy. It initially denied it due to Loriane's failure to produce clear and convincing evidence of another involved motorist. When that evidence was provided, payment was promptly made. In response, Loriane produced no evidence of reckless disregard by Geico. "The party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial[.]" *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 194 (Ky. 2013) (citation omitted). Based on these principles, we cannot agree that the circuit court erred in granting summary judgment to Geico. *See Breedlove v. State Farm Fire & Cas. Co.*, 690 S.W.3d 904, 917 (Ky. App. 2024).

# CONCLUSION

Accordingly, we AFFIRM the summary judgments of the claims against Geico; we VACATE the circuit court's decision allowing more time for the filing of a late notice of appeal; and DISMISS the appeal as to the claims against Michael.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE LORIANE POWELL:

David V. Oakes
Paducah, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT MICHAEL POWELL:

Ryan F. Quick
Elizabethtown, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT GEICO INDEMNITY COMPANY:

Charles E. Stopher
Bethany A. Breetz
Louisville, Kentucky